STATE OF MAINE
CUMBERLAND, ss

BUSINESS AND CONSUMER COURT
Location: Portland
Docket No.: BCD-CV-10-19
UCN -CUM- 4/5/12

GWENDOLYN RICHARDS, Individually
and as Personal Representative of the
ESTATE OF AUSTIN RICHARDS, JEAN
ANN NOONAN, JEFFREY RICHARDS,
JERRY RICHARDS, and JOEL
RICHARDS,

Plaintiffs,

v.

ARMSTRONG INTERNATIONAL, INC.,
CRANE CO., DATRON INC.
LIQUIDATING TRUST, GOULDS
PUMPS, INC., and THE NASH
ENGINEERING CO.,

Defendants

**DECISION AND ORDER**
(Armstrong International, Inc.)

In this action, Plaintiffs seek to recover damages allegedly resulting from the death of

Austin Richards (the Decedent) due to his exposure to asbestos during the course of his

employment at the Great Northern Paper Company (Great Northern). Plaintiffs allege that as a

result of exposure to asbestos insulation used with products manufactured by each of the

Defendants, the Decedent contracted mesothelioma, which resulted in his death. The matter is

before the Court on the motion for summary judgment of Defendant Armstrong International,

Inc. (Armstrong).

I.    BACKGROUND

The following facts are undisputed, except where noted. The Decedent, Austin Richards,

worked as a mason at the East Millinocket paper mill owned by Great Northern between 1950

1

and 1953 and between 1956 to 1987. (Supp. S.M.F. ¶ 4; Opp. S.M.F. ¶ 4.) As a mason's helper and mason at the mill,[1] Decedent's responsibilities included the removal insulation from pipes and various pieces of equipment (including pumps, turbines, valves, boilers, and steam traps) to allow other tradesmen to do their respective jobs (such as performing internal repairs of the pump), and then to reinsulate the pipes and equipment. (Supp. S.M.F. ¶ 6; Opp. S.M.F. ¶ 6; A.S.M.F. ¶ 5; Reply S.M.F. ¶ 5.) Until the 1970s, the insulation used at the mill contained asbestos. (A.S.M.F. ¶ 10; Reply S.M.F. ¶ 10.) Removal of the insulation created a significant amount of dust. (A.S.M.F. ¶ 4; Reply S.M.F. ¶ 4.) The mixing of asbestos-containing cement used for insulation and sweeping debris from the floor also created dust. (A.S.M.F. ¶ 4; Reply S.M.F. ¶ 4.)

Armstrong manufactures steam traps. Although the parties dispute the time at which Armstrong products were present at the mill, one of Decedent's coworkers recalls that Armstrong steam traps were located at the mill. (A.S.M.F. ¶ 10; Reply S.M.F. ¶ 10.)

The Decedent was diagnosed with malignant mesothelioma at age 71 and passed away on August 19, 2007. (A.S.M.F. ¶ 1; Reply S.M.F. ¶ 1.)

## II. DISCUSSION

### A. Standard of Review

Pursuant to M.R. Civ. P. 56(c), a moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, . . . show that there is no genuine issue as to any material fact set forth in those statements and that [the] party is entitled to a judgment as a matter of law." A party wishing to avoid summary judgment must present a prima facie case for each element of a claim or defense that is asserted. *See Reliance Nat'l Indem. v. Knowles Indus. Svcs.*, 2005 ME 29, ¶ 9, 868 A.2d

---

[1] The Decedent performed "brick work" on a less regular basis. (A.S.M.F. ¶ 3; Reply S.M.F. ¶ 3.)

2

220. At this stage, the facts in the summary judgment record are reviewed "in the light most favorable to the nonmoving party." *Lightfoot v. Sch. Admin. Dist. No. 35*, 2003 ME 24, ¶ 6, 816 A.2d 63. A material fact is a fact that has "the potential to affect the outcome of the suit." *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573. "If material facts are disputed, the dispute must be resolved through fact-finding." *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18.

A factual issue is genuine when there is sufficient supporting evidence for the claimed fact that would require a fact-finder to choose between competing versions of the facts at trial. *See Inkel v. Livingston*, 2005 ME 42, ¶ 4, 869 A.2d 745. "Neither party may rely on conclusory allegations or unsubstantiated denials, but must identify specific facts derived from the pleadings, depositions, answers to interrogatories, admissions and affidavits to demonstrate either the existence or absence of an issue of fact." *Kenny v. Dep't of Human Svcs.*, 1999 ME 158, ¶ 3, 740 A.2d 560 (quoting *Vinick v. Comm'r*, 110 F.3d 168, 171 (1st Cir. 1997)).

B.    Applicable Law

Plaintiffs' primary causes of action against Armstrong are negligence and strict liability.[2] Plaintiffs allege that the use of asbestos insulation on Armstrong's steam traps and was reasonably foreseeable, and that Armstrong was negligent in the manufacture and sale of its products in part because Armstrong failed to warn of the reasonable foreseeable dangers associated with the use of its products with asbestos-containing insulation made by third parties. As a result, the Decedent allegedly was exposed to harmful asbestos insulation, which caused Decedent to develop mesothelioma, and ultimately resulted in his death.

---

[2] In Count I of the complaint, Plaintiffs allege that the negligence of each manufacturer Defendant, including Crane, caused the Decedent's exposure to asbestos, development of mesothelioma, and ultimate death. Plaintiffs also assert strict liability for defective design and condition based on asbestos within the products and the failure to warn of the dangers of asbestos (Count I), civil conspiracy among all the defendants (Count III), gross negligence (Count IV), "aiding and abetting" among the Defendants' negligent and intentional acts (Count V), negligence per se against all defendants based on alleged violations of state and federal law (Count VI), and loss of consortium (Count VII).

3

"The essential elements of a claim for negligence are duty, breach, proximate causation, and harm." *Baker v. Farrand*, 2011 ME 91, ¶ 11, 26 A.3d 806. A plaintiff must demonstrate that "a violation of the duty to use the appropriate level of care towards another, is the legal cause of harm to" the plaintiff and that the defendant's "conduct [was] a substantial factor in bringing about the harm." *Spickler v. York*, 566 A.2d 1385, 1390 (Me. 1993) (internal citations omitted); *see also Bonin v. Crepeau*, 2005 ME 59, ¶ 10, 873 A.2d 346 (outlining negligence cause of action for supplying a product without adequate warnings to the user); RESTATEMENT (SECOND) OF TORTS § 388 (1965). "Maine's strict liability statute, [14 M.R.S. § 221 (2011)], imposes liability on manufacturers and suppliers who market defective, unreasonably dangerous products," including liability for defects based on the failure to warn of the product's dangers.[3] *See Bernier v. Raymark Indus., Inc.*, 516 A.2d 534, 537 (Me. 1986).

As the asbestos litigation has evolved both nationally and within Maine, the level of proof necessary to establish the requisite relationship between a plaintiff's injuries and a defendant's product has been subject of much debate.[4] A majority of jurisdictions have adopted the standard articulated by the court in *Lohrmann v. Pittsburg Corning Corp.*, 782 F.2d 1156 (4th Cir. 1986), where the court construed the "substantial factor" test of the Restatement (Second) of Torts.[5] In *Lohrmann*, the court announced and applied the "frequency-regularity-proximity test", which requires a plaintiff to "prove more than a casual or minimum contact with the product"

---

[3] In addition, strict liability can attach for a design defect or a defect in the manufacturing process. *See Pottle v. Up-Right, Inc.*, 628 A.2d 672, 674-75 (Me. 1993). Those theories of liability are not at issue in this case.

[4] In their opposition to Armstrong's motion for summary judgment, Plaintiffs write that strict liability in Maine requires medical causation and a product nexus in order to prove the necessary link between the alleged defective product and the claimed damages. (Pls.' Opp'n MSJ 6.) Plaintiffs also assert that this "rubric . . . is a departure from the so-called 'frequency, regularity, and proximity test' of *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1157 (4th Cir. 1986)." (Pls.' Opp'n MSJ 6.) Because the Maine Law Court has not addressed the issue in the context of asbestos litigation (Plaintiffs cite other Superior Court decisions as authority for the standard in Maine), the Court will discuss its reasoning for applying a standard other than as articulated in *Lohrmann*.

[5] The Restatement (Second) of Torts is consistent with the causation standard in Maine. Section 431 provides in pertinent part that "[t]he actor's negligent conduct is a legal cause of harm to another if his conduct is a substantial factor in bringing about the harm ..."

4

that contains asbestos. *Lohrmann*, 782 F.2d at 1162. Rather, under *Lohrmann*, a plaintiff must present "evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked." *Id.* at 1162-63. *Lohrmann* suggests that the Court engage a quantitative analysis of a party's exposure to asbestos in order to determine whether, as a matter of law, the party can prevail.

Although the Maine Law Court has not addressed the issue, at least one Justice of the Maine Superior Court has expressly rejected the *Lohrmann* standard. Justice Ellen Gorman[6] rejected the *Lohrmann* standard "because it is entirely the jury's function to determine if the conduct of the defendant was a substantial factor in causing the plaintiff's injury and because it is not appropriate for the court to determine whether a plaintiff has proven that a defendant's product proximately caused the harm." *Campbell v. The H.B. Smith Co., Inc.*, Docket No. CV-04-57 at 7 (Me. Super. Ct., April 2, 2007) (Gorman, J).[7] In rejecting the *Lohrmann* standard, Justice Gorman wrote that to establish a *prima facie* case, a plaintiff must demonstrate:

> (1) medical causation – that the plaintiff's exposure to the defendant's product was a substantial factor in causing the plaintiff's injury and (2) product nexus – that the defendant's asbestos-containing product was *at the site where plaintiff worked or was present, and that the plaintiff was in proximity to that product at the time it was being used* ... a plaintiff must prove not only that the asbestos products were used at the worksite, but that the employee inhaled the asbestos from the defendant's product.

*Campbell* at 5-6. (citing, 63 Am. Jur. 2d Products Liability § 70 (2001).

Insofar as under *Lohrmann* a plaintiff must prove exposure to asbestos over a sustained period of time while under the standard applied by Justice Gorman a plaintiff must only demonstrate that plaintiff was in proximity to the product at the time that it was being used, the

---

[6] At the time, Justice Gorman was a member of the Maine Superior Court. Justice Gorman was subsequently appointed to the Maine Supreme Judicial Court.

[7] Justice Gorman also rejected the *Lohrmann* standard for similar reasons in *Boyden v. Tri-State Packing Supply, et al.*, Docket No. CV-04-452 (Me. Super. Ct., Feb. 28, 2007).

*Lohrmann* standard imposes a higher threshold for claimants. The Court's decision as to the applicable standard cannot, however, be controlled by the standard's degree of difficulty. Instead, the standard must be consistent with basic principles of causation. In this regard, the Court agrees with the essence of Justice Gorman's conclusion – to require a quantitative assessment of a plaintiff's exposure to asbestos, as contemplated by *Lohrmann*, would usurp the fact finder's province. Whether a defendant's conduct caused a particular injury is at its core a question of fact. The Court perceives of no basis in law to deviate from this longstanding legal principle. The Court, therefore, concludes that in order to avoid summary judgment, in addition to producing evidence of medical causation, a plaintiff must establish the product nexus through competent evidence. In particular, a plaintiff must demonstrate (1) that the defendant's product was at the defendant's work place, (2) that the defendant's product contained asbestos, (3) and that the plaintiff had personal contact with the asbestos from the defendant's product. If a plaintiff produces such evidence, which can be either direct or circumstantial, the question of whether the defendant's product was a "substantial factor" in causing the plaintiff's damages is for the jury.

Thus, to survive the motion for summary judgment, the Plaintiffs must first demonstrate that: (1) Armstrong's product was at Great Northern, (2) Armstrong's product at Great Northern contained asbestos, and (3) the Decedent had personal contact with asbestos from Armstrong's product. "If a plaintiff produces such evidence, which can be either direct or circumstantial, the question of whether the defendant's product was a 'substantial factor' in causing the plaintiff's damages is for the jury." *Rumery v. Garlock Sealing Techs.*, 2009 Me. Super. LEXIS 73, at *8 (Apr. 24, 2009); *see also Addy v. Jenkins, Inc.*, 2009 ME 46, ¶ 19, 969 A.2d 935 ("Proximate cause is generally a question of fact for the jury.").

6

C. Product Nexus

In support of its motion for summary judgment, Armstrong asserts that there is no admissible evidence through which Plaintiffs can prove the Decedent was exposed to asbestos from an Armstrong product. Armstrong thus challenges the product nexus between the Decedent and its products. Armstrong also contends that because any asbestos exposure by the Decedent is the result of insulation applied after manufacture of the steam trap, it cannot be liable for any exposure to asbestos from third party products.

The record reveals that the parties dispute whether there is sufficient admissible evidence to establish the presence of Armstrong's products at Great Northern. While Decedent testified at his deposition that Armstrong steam traps were present at the mill, Armstrong disputes whether the Decedent's testimony is based on personal knowledge or a summary of information received from other former Great Northern employees. (*See* A.S.M.F. ¶ 6; Reply S.M.F. ¶ 6.) In addition, James Cramp, a coworker of the Decedent at Great Northern, recalled seeing Armstrong steam traps at the mill, but Armstrong qualifies this statement to note that there is no time period for the recollection. (A.S.M.F. ¶ 10; Reply S.M.F. ¶ 10.) The Court does not have to resolve the parties' dispute regarding the record evidence at this stage of the proceedings. Viewing the evidence in the light most favorable to Plaintiffs as the non-moving party, *see Lightfoot*, 2003 ME 24, ¶ 6, 816 A.2d at 65, the Plaintiffs have established the presence of Armstrong steam traps at Great Northern.

Plaintiffs, however, have not produced sufficient evidence from which a fact finder could reasonably conclude that Decedent insulated Armstrong's products with asbestos or was otherwise exposed to the products. *See Boyden*, 2007 Me. Super. LEXIS 47, at *11. Even when viewed in the light most favorable to the Plaintiffs, *see Lightfoot*, 2003 ME 24, ¶ 6, 816 A.2d at

7

65, the Decedent's testimony at his deposition that he remembered Armstrong steam traps at the plant does not establish that he in fact insulated those steam traps with asbestos, or was otherwise exposed to asbestos that was associated with Armstrong's products. The fact that Armstrong steam traps utilized asbestos-containing gaskets during the relevant time period is insufficient to establish Armstrong's potential liability without demonstrating that the Decedent had personal contact with the steam traps. Because Armstrong's duty to warn would only arise after sufficient proof of Decedent's exposure to asbestos from Armstrong's products, Plaintiffs have not made out a prima facie case to establish negligence or any duty to warn under the law of strict liability. Accordingly, Armstrong is entitled to summary judgment.

## III. CONCLUSION

Based on the foregoing analysis, the Court grants Armstrong International, Inc.'s motion for summary judgment, and enters judgment in favor of Armstrong International, Inc. on all counts of Plaintiffs' complaint.

Pursuant to M.R. Civ. P. 79(a), the Clerk shall incorporate this Decision and Order into the docket by reference.

Date: 4/5/12

Justice, Maine Business & Consumer Court

Entered on the Docket: 4-6-12
Copies sent via Mail ___ Electronically ✓

8

STATE OF MAINE
CUMBERLAND, ss

BUSINESS AND CONSUMER COURT
Location: Portland
Docket No.: BCD-CV-10-19

GWENDOLYN RICHARDS, Individually
and as Personal Representative of the
ESTATE OF AUSTIN RICHARDS, JEAN
ANN NOONAN, JEFFREY RICHARDS,
JERRY RICHARDS, and JOEL
RICHARDS,

Plaintiffs,

v.

ARMSTRONG INTERNATIONAL, INC.,
CRANE CO., DATRON INC.
LIQUIDATING TRUST, GOULDS
PUMPS, INC., and NASH ENGINEERING
CO.,

Defendants

**DECISION AND ORDER**
(Nash Engineering Co.)

In this action, Plaintiffs seek to recover damages allegedly resulting from the death of

Austin Richards (the Decedent) due to his exposure to asbestos during the course of his

employment at the Great Northern Paper Company (Great Northern). Plaintiffs allege that as a

result of exposure to asbestos insulation used with products manufactured by each of the

Defendants, the Decedent contracted mesothelioma, which resulted in his death. The matter is

before the Court on the summary judgment motion of Defendant Nash Engineering Co.

I.     BACKGROUND

The following facts are undisputed, except where noted. The Decedent, Austin Richards,

worked as a mason at the East Millinocket paper mill owned by Great Northern between 1950

and 1953 and between 1956 to 1987. (Supp. S.M.F. ¶ 4; Opp. S.M.F. ¶ 4.) As a mason's helper

1

and mason at the mill,[1] Decedent's responsibilities included the removal insulation from the pumps and associated pipes to allow other tradesmen to do their respective jobs (such as performing internal repairs of the pump), and then to reinsulate the pumps and valves. (A.S.M.F. ¶ 6; Reply S.M.F. ¶ 6.) Because there were so many pumps at the mill, the Decedent removed and replaced insulation from pumps on a daily basis. (A.S.M.F. ¶ 7; Reply S.M.F. ¶ 7.) The Decedent did not work on the internal aspects of the pumps, nor would it have been his job to work on the interior of pumps at the paper mill. (Supp. S.M.F. ¶¶ 7, 12; Opp. S.M.F. ¶¶ 7, 12.) Until the 1970s, the insulation used at the mill contained asbestos. (A.S.M.F. ¶ 10; Reply S.M.F. ¶ 10.) Removal of the insulation created a significant amount of dust. (A.S.M.F. ¶ 4; Reply S.M.F. ¶ 4.) The mixing of asbestos-containing cement used for insulation and sweeping debris from the floor also created dust. (A.S.M.F. ¶ 4; Reply S.M.F. ¶ 4.)

Nash manufactured vacuum pump and compressor systems, some of which had application for use in paper mills. (Supp. S.M.F. ¶ 5; Opp. S.M.F. ¶ 5.) The Decedent recalled pumps manufactured by Nash at the mill because the name of the company was often stamped on the pump itself. (A.S.M.F. ¶ 5; Reply S.M.F. ¶ 5.) Purchase orders from the mill to Nash reflect that during the Decedent's employment, there were ten (10) Nash pumps in five (5) different models at the mill.[2] (A.S.M.F. ¶ 11; Reply S.M.F. ¶11.) For certain Nash pumps, Great Northern requested installation instructions and a list of spare replacement parts. (A.S.M.F. ¶¶ 12, 16; Reply S.M.F. ¶¶ 12, 16.) Nash sold one full set of replacement gaskets for a pump to Great Northern; Nash sold both paper and asbestos replacement gaskets, but the type of gaskets sold to Great Northern is unknown. (A.S.M.F. ¶ 16; Reply S.M.F. ¶ 16.)

---

[1] The Decedent performed "brick work" on a less regular basis. (A.S.M.F. ¶ 3; Reply S.M.F. ¶ 3.)

[2] Nash qualifies this statement to note that purchase orders are not equivalent to shipping orders and thus do not confirm actual sales or receipt by Great Northern. (Reply S.M.F. ¶ 11.) Viewed in the light most favorable to Plaintiffs, however, the evidence supports the inference that the pumps were delivered.

Mr. Richards was diagnosed with malignant mesothelioma at the age of 71 and passed away on August 19, 2007. (A.S.M.F. ¶ 1; Reply S.M.F. ¶ 1.)

## II.   DISCUSSION

### A.   Standard of Review

Pursuant to M.R. Civ. P. 56(c), a moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, . . . show that there is no genuine issue as to any material fact set forth in those statements and that [the] party is entitled to a judgment as a matter of law." A party wishing to avoid summary judgment must present a prima facie case for each element of a claim or defense that is asserted. *See Reliance Nat'l Indem. v. Knowles Indus. Svcs.*, 2005 ME 29, ¶ 9, 868 A.2d 220. At this stage, the facts in the summary judgment record are reviewed "in the light most favorable to the nonmoving party." *Lightfoot v. Sch. Admin. Dist. No. 35*, 2003 ME 24, ¶ 6, 816 A.2d 63. A material fact is a fact that has "the potential to affect the outcome of the suit." *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573. "If material facts are disputed, the dispute must be resolved through fact-finding." *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18.

A factual issue is genuine when there is sufficient supporting evidence for the claimed fact that would require a fact-finder to choose between competing versions of the facts at trial. *See Inkel v. Livingston*, 2005 ME 42, ¶ 4, 869 A.2d 745. "Neither party may rely on conclusory allegations or unsubstantiated denials, but must identify specific facts derived from the pleadings, depositions, answers to interrogatories, admissions and affidavits to demonstrate either the existence or absence of an issue of fact." *Kenny v. Dep't of Human Svcs.*, 1999 ME 158, ¶ 3, 740 A.2d 560 (quoting *Vinick v. Comm'r*, 110 F.3d 168, 171 (1st Cir. 1997)).

3

A. Applicable Law

Plaintiffs' primary causes of action against Nash are negligence and strict liability.[3] Plaintiffs allege that the use of asbestos insulation on Nash's products was reasonably foreseeable, and that Nash failed to warn of the reasonable foreseeable dangers associated with the use of its products with asbestos-containing insulation made by third parties. According the Plaintiffs, as a result of Nash's failure to warn the Decedent of those dangers or recommend safety precautions, the Decedent was exposed to harmful asbestos insulation, which caused him to develop mesothelioma, and ultimately resulted in his death.

"The essential elements of a claim for negligence are duty, breach, proximate causation, and harm." *Baker v. Farrand*, 2011 ME 91, ¶ 11, 26 A.3d 806. A plaintiff must demonstrate that "a violation of the duty to use the appropriate level of care towards another, is the legal cause of harm to" the plaintiff and that the defendant's "conduct [was] a substantial factor in bringing about the harm." *Spickler v. York*, 566 A.2d 1385, 1390 (Me. 1993) (internal citations omitted); *see also Bonin v. Crepeau*, 2005 ME 59, ¶ 10, 873 A.2d 346 (outlining negligence cause of action for supplying a product without adequate warnings to the user); RESTATEMENT (SECOND) OF TORTS § 388 (1965). "Maine's strict liability statute, [14 M.R.S. § 221 (2011)], imposes liability on manufacturers and suppliers who market defective, unreasonably dangerous products," including liability for defects based on the failure to warn of the product's dangers.[4] *See Bernier v. Raymark Indus., Inc.*, 516 A.2d 534, 537 (Me. 1986).

---

[3] In Count I of the complaint, Plaintiffs allege that the negligence of each manufacturer Defendant, including Crane, caused the Decedent's exposure to asbestos, development of mesothelioma, and ultimate death. Plaintiffs also assert strict liability for defective design and condition based on asbestos within the products and the failure to warn of the dangers of asbestos (Count I), civil conspiracy among all the defendants (Count III), gross negligence (Count IV), "aiding and abetting" among the Defendants' negligent and intentional acts (Count V), negligence per se against all defendants based on alleged violations of state and federal law (Count VI), and loss of consortium (Count VII).

[4] In addition, strict liability can attach for a design defect or a defect in the manufacturing process. *See Pottle v. Up-Right, Inc.*, 628 A.2d 672, 674-75 (Me. 1993). Those theories of liability are not at issue in this case.

4

As the asbestos litigation has evolved both nationally and within Maine, the level of proof necessary to establish the requisite relationship between a plaintiff's injuries and a defendant's product has been subject of much debate.[5] A majority of jurisdictions have adopted the standard articulated by the court in *Lohrmann v. Pittsburg Corning Corp.*, 782 F.2d 1156 (4th Cir. 1986), where the court construed the "substantial factor" test of the Restatement (Second) of Torts.[6] In *Lohrmann*, the court announced and applied the "frequency-regularity-proximity test", which requires a plaintiff to "prove more than a casual or minimum contact with the product" that contains asbestos. *Lohrmann*, 782 F.2d at 1162. Rather, under *Lohrmann*, a plaintiff must present "evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked." *Id.* at 1162-63. *Lohrmann* suggests that the Court engage a quantitative analysis of a party's exposure to asbestos in order to determine whether, as a matter of law, the party can prevail.

Although the Maine Law Court has not addressed the issue, at least one Justice of the Maine Superior Court has expressly rejected the *Lohrmann* standard. Justice Ellen Gorman[7] rejected the *Lohrmann* standard "because it is entirely the jury's function to determine if the conduct of the defendant was a substantial factor in causing the plaintiff's injury and because it is not appropriate for the court to determine whether a plaintiff has proven that a defendant's product proximately caused the harm." *Campbell v. The H.B. Smith Co., Inc.*, Docket No. CV-

---

[5] In their opposition to Nash's motion for summary judgment, Plaintiffs write that strict liability in Maine requires medical causation and a product nexus in order to prove the necessary link between the alleged defective product and the claimed damages. (Pls.' Opp'n MSJ 7.) Plaintiffs also assert that this "rubric . . . is a departure from the so-called 'frequency, regularity, and proximity test' of *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1157 (4th Cir. 1986)." (Pls.' Opp'n MSJ 7) Because the Maine Law Court has not addressed the issue in the context of asbestos litigation (Plaintiffs cite other Superior Court decisions as authority for the standard in Maine), the Court will discuss its reasoning for applying a standard other than as articulated in *Lohrmann*.

[6] The Restatement (Second) of Torts is consistent with the causation standard in Maine. Section 431 provides in pertinent part that "[t]he actor's negligent conduct is a legal cause of harm to another if his conduct is a substantial factor in bringing about the harm ..."

[7] At the time, Justice Gorman was a member of the Maine Superior Court. Justice Gorman was subsequently appointed to the Maine Supreme Judicial Court.

04-57 at 7 (Me. Super. Ct., April 2, 2007) (Gorman, J.).[8] In rejecting the *Lohrmann* standard, Justice Gorman wrote that to establish a *prima facie* case, a plaintiff must demonstrate:

> (1) medical causation – that the plaintiff's exposure to the defendant's product was a substantial factor in causing the plaintiff's injury and (2) product nexus – that the defendant's asbestos-containing product was *at the site where plaintiff worked or was present, and that the plaintiff was in proximity to that product at the time it was being used* ... a plaintiff must prove not only that the asbestos products were used at the worksite, but that the employee inhaled the asbestos from the defendant's product.

*Campbell* at 5-6. (citing, 63 Am. Jur. 2d Products Liability § 70 (2001).

Insofar as under *Lohrmann* a plaintiff must prove exposure to asbestos over a sustained period of time while under the standard applied by Justice Gorman a plaintiff must only demonstrate that plaintiff was in proximity to the product at the time that it was being used, the *Lohrmann* standard imposes a higher threshold for claimants. The Court's decision as to the applicable standard cannot, however, be controlled by the standard's degree of difficulty. Instead, the standard must be consistent with basic principles of causation. In this regard, the Court agrees with the essence of Justice Gorman's conclusion – to require a quantitative assessment of a plaintiff's exposure to asbestos, as contemplated by *Lohrmann*, would usurp the fact finder's province. Whether a defendant's conduct caused a particular injury is at its core a question of fact. The Court perceives of no basis in law to deviate from this longstanding legal principle. The Court, therefore, concludes that in order to avoid summary judgment, in addition to producing evidence of medical causation, a plaintiff must establish the product nexus through competent evidence. In particular, a plaintiff must demonstrate (1) that the defendant's product was at the defendant's work place, (2) that the defendant's product contained asbestos, (3) and that the plaintiff had personal contact with the asbestos from the defendant's product. If a

---

[8] Justice Gorman also rejected the *Lohrmann* standard for similar reasons in *Boyden v. Tri-State Packing Supply, et al.*, Docket No. CV-04-452 (Me. Super. Ct., Feb. 28, 2007).

6

plaintiff produces such evidence, which can be either direct or circumstantial, the question of whether the defendant's product was a "substantial factor" in causing the plaintiff's damages is for the jury.

Thus, to survive the motion for summary judgment, the Plaintiffs must preliminarily demonstrate that: (1) Nash's product was at Great Northern, (2) Nash's product at Great Northern contained asbestos, and (3) the Decedent had personal contact with asbestos from Nash's product. "If a plaintiff produces such evidence, which can be either direct or circumstantial, the question of whether the defendant's product was a 'substantial factor' in causing the plaintiff's damages is for the jury." *Rumery v. Garlock Sealing Techs.*, 2009 Me. Super. LEXIS 73, at *8 (Apr. 24, 2009); *see also* Addy v. Jenkins, Inc., 2009 ME 46, ¶ 19, 969 A.2d 935, 940 ("Proximate cause is generally a question of fact for the jury.").

B.    Analysis

In support of its motion for summary judgment, Nash makes two arguments. First, Nash argues that Plaintiffs have not shown sufficient evidence of exposure to asbestos from a Nash product. Second, anticipating an argument regarding the use of asbestos insulation on or near its products, Nash argues that a manufacturer has no duty to warn of any potential dangers of third-party's products when used in conjunction with its own. Because any duty to warn would only arise after sufficient proof of exposure to asbestos from Nash's products, the Court will address that argument first.

Plaintiffs argue that there is sufficient evidence of exposure in the record because "there were a variety of Nash pumps at Great Northern, [and] Decedent breathed asbestos dust created by his work installing and removing asbestos-containing insulation from those pumps." Contrary to Plaintiffs' argument, viewed in the light most favorable to Plaintiffs, *see Lightfoot*,

7

2003 ME 24, ¶ 6, 816 A.2d at 65, the summary judgment record does not establish the requisite exposure to asbestos from Nash products. Although for purposes of summary judgment, Plaintiffs have established that Nash's products were present at Great Northern during the time of Decedent's employment, Plaintiffs have not established that Decedent had the requisite personal contact with asbestos from Nash's products. *See Boyden*, 2007 Me. Super. LEXIS 47, at *11. The Decedent's recollection of the presence of Nash products at the mill is simply insufficient to establish that the Decedent was exposed to asbestos dust generated by a product for which Nash is legally responsible. Nash was not the exclusive supplier of pumps and gaskets to mill. Indeed, given that there were only ten Nash pumps and one set of Nash replacement gaskets sold to the mill, a fact finder could not rationally conclude that the Decedent's contact with a Nash product was inevitable. Accordingly, Plaintiffs cannot prevail on their claim against Nash.

CONCLUSION

Based on the foregoing analysis, the Court grants Nash Engineering Co.'s motion for summary judgment, and enters judgment in favor of Nash Engineering Co. on all counts of Plaintiffs' complaint.

Pursuant to M.R. Civ. P. 79(a), the Clerk shall incorporate this Decision and Order into the docket by reference.

Date: 4/5/12

Justice, Maine Business & Consumer Court

8

STATE OF MAINE
CUMBERLAND, ss

BUSINESS AND CONSUMER COURT
Location: Portland
Docket No.: BCD-CV-10-19

)
GWENDOLYN RICHARDS, Individually )
and as Personal Representative of the )
ESTATE OF AUSTIN RICHARDS, JEAN )
ANN NOONAN, JEFFREY RICHARDS, )
JERRY RICHARDS, and JOEL )
RICHARDS, )
)
          Plaintiffs, )
)
      v. )
)
ARMSTRONG INTERNATIONAL, INC., )
CRANE CO., DATRON INC. )
LIQUIDATING TRUST, GOULDS )
PUMPS, INC., and THE NASH )
ENGINEERING CO., )
)
          Defendants ) ·
)

**DECISION AND ORDER**
(Datron Inc. Liquidating Trust)

In this action, Plaintiffs seek to recover damages allegedly resulting from the death of Austin Richards due to his exposure to asbestos during the course of his employment at the Great Northern Paper Company (Great Northern). Plaintiffs allege that as a result of exposure to asbestos insulation used with products manufactured by each of the Defendants, the Decedent contracted mesothelioma, which resulted in his death. This matter is before the Court on the motion for summary judgment of Defendant Datron Inc. Liquidating Trust (Datron), individually and as the successor in interest to Nicholson Steam Trap. Datron was substituted for Spence Engineering Company on May 5, 2011.

## I. BACKGROUND

The following facts are undisputed, except where noted. The Decedent, Austin Richards, worked as a mason at the East Millinocket paper mill owned by Great Northern between 1950 and 1953 and between 1956 to 1987. (Supp. S.M.F. ¶ 4; Opp. S.M.F. ¶ 4.) As a mason's helper and mason at the mill,[1] Decedent's responsibilities included the removal insulation from pipes and various pieces of equipment (including pumps, turbines, valves, boilers, and steam traps) to allow other tradesmen to do their respective jobs (such as performing internal repairs of the pump), and then to reinsulate the pipes and equipment. (Supp. S.M.F. ¶ 6; Opp. S.M.F. ¶ 6; A.S.M.F. ¶ 5; Reply S.M.F. ¶ 5.) Until the 1970s, the insulation used at the mill contained asbestos. (A.S.M.F. ¶ 10; Reply S.M.F. ¶ 10.) Removal of the insulation created a significant amount of dust. (A.S.M.F. ¶ 4; Reply S.M.F. ¶ 4.) The mixing of asbestos-containing cement used for insulation and sweeping debris from the floor also created dust. (A.S.M.F. ¶ 4; Reply S.M.F. ¶ 4.)

Datron's predecessor manufactures steam traps. Although Decedent testified at his deposition that there were Nicholson steam traps at the mill, Datron disputes whether the testimony is based on his personal knowledge, or whether the testimony is based on a summary of information received from other former Great Northern employees. (*See* A.S.M.F. ¶ 6; Reply S.M.F. ¶ 6.)

The Decedent was diagnosed with malignant mesothelioma at age 71 and passed away on August 19, 2007. (A.S.M.F. ¶ 1; Reply S.M.F. ¶ 1.)

## II. DISCUSSION

### A. Standard of Review

---

[1] The Decedent performed "brick work" on a less regular basis. (A.S.M.F. ¶ 3; Reply S.M.F. ¶ 3.)

2

Pursuant to M.R. Civ. P. 56(c), a moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, . . . show that there is no genuine issue as to any material fact set forth in those statements and that [the] party is entitled to a judgment as a matter of law." A party wishing to avoid summary judgment must present a prima facie case for each element of a claim or defense that is asserted. *See Reliance Nat'l Indem. v. Knowles Indus. Svcs.*, 2005 ME 29, ¶ 9, 868 A.2d 220. At this stage, the facts in the summary judgment record are reviewed "in the light most favorable to the nonmoving party." *Lightfoot v. Sch. Admin. Dist. No. 35*, 2003 ME 24, ¶ 6, 816 A.2d 63. A material fact is a fact that has "the potential to affect the outcome of the suit." *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573. "If material facts are disputed, the dispute must be resolved through fact-finding." *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18.

A factual issue is genuine when there is sufficient supporting evidence for the claimed fact that would require a fact-finder to choose between competing versions of the facts at trial. *See Inkel v. Livingston*, 2005 ME 42, ¶ 4, 869 A.2d 745. "Neither party may rely on conclusory allegations or unsubstantiated denials, but must identify specific facts derived from the pleadings, depositions, answers to interrogatories, admissions and affidavits to demonstrate either the existence or absence of an issue of fact." *Kenny v. Dep't of Human Svcs.*, 1999 ME 158, ¶ 3, 740 A.2d 560 (quoting *Vinick v. Comm'r*, 110 F.3d 168, 171 (1st Cir. 1997)).

B.     Applicable Law

Plaintiffs' primary causes of action against Datron are negligence and strict liability.[2] Plaintiffs allege that the use of asbestos insulation on Nicholson pumps was reasonably

---

[2] Count I of the complaint alleges that each manufacturer Defendant's negligence, including Datron, caused the Decedent's exposure to asbestos, development of mesothelioma, and ultimate death. Count I also asserts strict liability for defective design and condition based on asbestos within the products and the failure to warn of the dangers of asbestos. Count III asserts civil conspiracy among all the defendants; Count IV alleges gross negligence.

3

foreseeable and that Datron failed to warn of the reasonable foreseeable dangers associated with the use of its products with asbestos-containing insulation made by third parties. As a result of Datron's failure to warn the Decedent of those dangers or recommend safety precautions, the Decedent was exposed to harmful asbestos insulation, which caused the Decedent to develop mesothelioma, and ultimately resulted in his death.

"The essential elements of a claim for negligence are duty, breach, proximate causation, and harm." *Baker v. Farrand*, 2011 ME 91, ¶ 11, 26 A.3d 806. A plaintiff must demonstrate that "a violation of the duty to use the appropriate level of care towards another, is the legal cause of harm to" the plaintiff and that the defendant's "conduct [was] a substantial factor in bringing about the harm." *Spickler v. York*, 566 A.2d 1385, 1390 (Me. 1993) (internal citations omitted); *see also Bonin v. Crepeau*, 2005 ME 59, ¶ 10, 873 A.2d 346 (outlining negligence cause of action for supplying a product without adequate warnings to the user); RESTATEMENT (SECOND) OF TORTS § 388 (1965). "Maine's strict liability statute, [14 M.R.S. § 221 (2011)], imposes liability on manufacturers and suppliers who market defective, unreasonably dangerous products," including liability for defects based on the failure to warn of the product's dangers.[3] *See Bernier v. Raymark Indus., Inc.*, 516 A.2d 534, 537 (Me. 1986).

As the asbestos litigation has evolved both nationally and within Maine, the level of proof necessary to establish the requisite relationship between a plaintiff's injuries and a defendant's product has been subject of much debate.[4] A majority of jurisdictions have adopted

Count V alleges "aiding and abetting" among the defendants' negligent and intentional acts. Count VI alleges negligence per se against all defendants based on alleged violations of state and federal law, and in Count VII, the Plaintiffs allege loss of consortium. The predicate of each cause of action is exposure to asbestos from one of Defendant's products.

[3] In addition, strict liability can attach for a design defect or a defect in the manufacturing process. *See Pottle v. Up-Right, Inc.*, 628 A.2d 672, 674-75 (Me. 1993). Those theories of liability are not at issue in this case.

[4] In their opposition to Datron's motion for summary judgment, Plaintiffs write that strict liability in Maine requires medical causation and a product nexus in order to prove the necessary link between the alleged defective product and the claimed damages. (Pls.' Opp'n MSJ 6.) Plaintiffs also assert that this "rubric . . . is a departure from the

4

the standard articulated by the court in *Lohrmann v. Pittsburg Corning Corp.*, 782 F.2d 1156 (4th Cir. 1986), where the court construed the "substantial factor" test of the Restatement (Second) of Torts.[5] In *Lohrmann*, the court announced and applied the "frequency-regularity-proximity test", which requires a plaintiff to "prove more than a casual or minimum contact with the product" that contains asbestos. *Lohrmann*, 782 F.2d at 1162. Rather, under *Lohrmann*, a plaintiff must present "evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked." *Id.* at 1162-63. *Lohrmann* suggests that the Court engage a quantitative analysis of a party's exposure to asbestos in order to determine whether, as a matter of law, the party can prevail.

Although the Maine Law Court has not addressed the issue, at least one Justice of the Maine Superior Court has expressly rejected the *Lohrmann* standard. Justice Ellen Gorman[6] rejected the *Lohrmann* standard "because it is entirely the jury's function to determine if the conduct of the defendant was a substantial factor in causing the plaintiff's injury and because it is not appropriate for the court to determine whether a plaintiff has proven that a defendant's product proximately caused the harm." *Campbell v. The H.B. Smith Co., Inc.*, Docket No. CV-04-57 at 7 (Me. Super. Ct., April 2, 2007) (Gorman, J.).[7] In rejecting the *Lohrmann* standard, Justice Gorman wrote that to establish a *prima facie* case, a plaintiff must demonstrate:

> (1) medical causation – that the plaintiff's exposure to the defendant's product was a substantial factor in causing the plaintiff's injury and (2) product nexus –

---

so-called 'frequency, regularity, and proximity test' of *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1157 (4th Cir. 1986)." (Pls.' Opp'n MSJ 6.) Because the Maine Law Court has not addressed the issue in the context of asbestos litigation (Plaintiffs cite other Superior Court decisions as authority for the standard in Maine), the Court will discuss its reasoning for applying a standard other than as articulated in *Lohrmann*.

[5] The Restatement (Second) of Torts is consistent with the causation standard in Maine. Section 431 provides in pertinent part that "[t]he actor's negligent conduct is a legal cause of harm to another if his conduct is a substantial factor in bringing about the harm ..."

[6] At the time, Justice Gorman was a member of the Maine Superior Court. Justice Gorman was subsequently appointed to the Maine Supreme Judicial Court.

[7] Justice Gorman also rejected the *Lohrmann* standard for similar reasons in *Boyden v. Tri-State Packing Supply, et al.*, Docket No. CV-04-452 (Me. Super. Ct., Feb. 28, 2007).

that the defendant's asbestos-containing product was *at the site where plaintiff worked or was present, and that the plaintiff was in proximity to that product at the time it was being used* ... a plaintiff must prove not only that the asbestos products were used at the worksite, but that the employee inhaled the asbestos from the defendant's product.

*Campbell* at 5-6. (citing, 63 Am. Jur. 2d Products Liability § 70 (2001).

Insofar as under *Lohrmann* a plaintiff must prove exposure to asbestos over a sustained period of time while under the standard applied by Justice Gorman a plaintiff must only demonstrate that plaintiff was in proximity to the product at the time that it was being used, the *Lohrmann* standard imposes a higher threshold for claimants. The Court's decision as to the applicable standard cannot, however, be controlled by the standard's degree of difficulty. Instead, the standard must be consistent with basic principles of causation. In this regard, the Court agrees with the essence of Justice Gorman's conclusion – to require a quantitative assessment of a plaintiff's exposure to asbestos, as contemplated by *Lohrmann*, would usurp the fact finder's province. Whether a defendant's conduct caused a particular injury is at its core a question of fact. The Court perceives of no basis in law to deviate from this longstanding legal principle. The Court, therefore, concludes that in order to avoid summary judgment, in addition to producing evidence of medical causation, a plaintiff must establish the product nexus through competent evidence. In particular, a plaintiff must demonstrate (1) that the defendant's product was at the defendant's work place, (2) that the defendant's product contained asbestos, (3) and that the plaintiff had personal contact with the asbestos from the defendant's product. If a plaintiff produces such evidence, which can be either direct or circumstantial, the question of whether the defendant's product was a "substantial factor" in causing the plaintiff's damages is for the jury.

6

Thus, to survive the motion for summary judgment, the Plaintiffs must first demonstrate that: (1) Datron's product was at Great Northern, (2) Datron's product at Great Northern contained asbestos, and (3) the Decedent had personal contact with asbestos from Datron's product. "If a plaintiff produces such evidence, which can be either direct or circumstantial, the question of whether the defendant's product was a 'substantial factor' in causing the plaintiff's damages is for the jury." *Rumery v. Garlock Sealing Techs.*, 2009 Me. Super. LEXIS 73, at *8 (Apr. 24, 2009); *see also Addy v. Jenkins, Inc.*, 2009 ME 46, ¶ 19, 969 A.2d 935 ("Proximate cause is generally a question of fact for the jury.").

### C. Product Nexus

In support of its motion for summary judgment, Datron asserts that there is no admissible evidence through which Plaintiffs can prove the Decedent worked on any asbestos-containing component of a Nicholson steam trap, for which Datron is alleged to be liable as the successor in interest. Datron thus challenges the product nexus between the Decedent and its products. Datron also asserts that because any asbestos exposure by the Decedent is the result of insulation applied after manufacture of the steam trap, it cannot be liable for any exposure to asbestos from third party products.

The record reveals that the parties dispute whether there is sufficient admissible evidence to establish the presence of Datron's products at Great Northern. The Decedent testified at his deposition that Nicholson steam traps were present at the mill, but Datron disputes whether the testimony is based on Decedent's personal knowledge, or based on a summary of information received from other former Great Northern employees. (*See* A.S.M.F. ¶ 6; Reply S.M.F. ¶ 6.) Datron also objects to paragraph 10 of Plaintiffs' additional statement of material facts as unsupported by record material. (Reply S.M.F. ¶ 10.) _The Court does not have to resolve the

7

parties' dispute regarding the record evidence at this stage of the proceedings. Viewing the evidence in the light most favorable to Plaintiffs as the non-moving party, *see Lightfoot*, 2003 ME 24, ¶ 6, 816 A.2d at 65, the Plaintiffs have established the presence of Nicholson steam traps (for which Datron is responsible) at Great Northern.

Plaintiffs, however, have not established that the Decedent was exposed to asbestos from Datron's products or that the Decedent insulated them with asbestos. *See Boyden*, 2007 Me. Super. LEXIS 47, at *11. Even when viewed in the light most favorable to the Plaintiffs, *see Lightfoot*, 2003 ME 24, ¶ 6, 816 A.2d at 65, the Decedent's testimony at his deposition that he remembered Nicholson steam traps at the plant does not establish that he in fact insulated those steam traps with asbestos, or was otherwise exposed to asbestos that was associated with Datron's products. The record is devoid of evidence from which a fact finder could reasonably conclude that the Decedent worked on, or otherwise had contact with Nicholson steam traps. Because Datron's duty to warn would only arise after sufficient proof of Decedent's exposure to asbestos from Datron's products, Plaintiffs have not made out a prima facie case to establish negligence or any duty to warn under the law of strict liability. Accordingly, Datron is entitled to summary judgment.

III. CONCLUSION

Based on the foregoing analysis, the Court grants Datron's motion for summary judgment, and enters judgment in favor of Datron on all counts of Plaintiffs' complaint.

Pursuant to M.R. Civ. P. 79(a), the Clerk shall incorporate this Decision and Order into the docket by reference.

Date: 4/5/12

_____
Justice, Maine Business & Consumer Court

Entered on the Docket: 4-6-12
Copies sent via Mail ___ Electronically ✓

STATE OF MAINE
CUMBERLAND, ss

BUSINESS AND CONSUMER COURT
Location: Portland
Docket No.: BCD-CV-10-19 ✓

GWENDOLYN RICHARDS, Individually )
and as Personal Representative of the )
ESTATE OF AUSTIN RICHARDS, JEAN )
ANN NOONAN, JEFFREY RICHARDS, )
JERRY RICHARDS, and JOEL )
RICHARDS, )
)
          Plaintiffs, )
)
      v. )
)
ARMSTRONG INTERNATIONAL, INC., )
CRANE CO., DATRON INC. )
LIQUIDATING TRUST, GOULDS )
PUMPS, INC., and NASH ENGINEERING )
CO., )
)
          Defendants )
)

**DECISION AND ORDER**
(Goulds Pumps, Inc.)

In this action, Plaintiffs seek to recover damages allegedly resulting from the death of

Austin Richards (the Decedent) due to his exposure to asbestos during the course of his

employment at the Great Northern Paper Company (Great Northern). Plaintiffs allege that as a

result of exposure to asbestos insulation used with products manufactured by each of the

Defendants, the Decedent contracted mesothelioma, which resulted in his death. The matter is

before the Court on the motion for summary judgment of Defendant Goulds Pumps, Inc.

(Goulds).

I.    BACKGROUND

Except where noted, the following facts in the summary judgment record are not in

dispute. *See F.R. Carroll, Inc. v. TD Bank, N.A.*, 2010 ME 115, ¶ 2, 8 A.3d 646, 647. The

1

Decedent Austin Richards worked as a mason at Great Northern from 1950 to 1953 and 1956 to 1987. (Supp. S.M.F. ¶¶ 1, 5; Opp. S.M.F. ¶¶ 1, 5.) As a mason, Richards removed and replaced asbestos insulation from pipecoverings and other equipment, including pumps, at Great Northern. (Supp. S.M.F. ¶ 1; Opp. S.M.F. ¶ 1; A.S.M.F. ¶¶ 3-5; Reply. S.M.F. ¶¶ 3-5.) Beyond insulating pumps at Great Northern, Richards was not involved in the installation or maintenance of pumps and had nothing to do with the internal workings of the pieces of equipment. (Supp. S.M.F. ¶¶ 9-10; Reply S.M.F. ¶¶ 9-10.)

It is undisputed that Goulds pumps were present at Great Northern during the period that the Decedent worked there as a mason. (Supp. S.M.F. ¶¶ 14-15; Opp. S.M.F. ¶¶ 14-15; A.S.M.F. ¶¶ 5, 11, 13, 15; Reply S.M.F. ¶¶ 5, 11, 13, 15.) Further, although disputed, the summary judgment record supports that the Decedent removed and replaced insulation on Goulds pumps.[1] (Supp. S.M.F. ¶ 14; Opp. S.M.F. ¶ 14.) The parties dispute whether there is sufficient, admissible evidence to support Plaintiffs' assertion that a Goulds pump model that recommended external insulation was utilized at Great Northern. (A.S.M.F. ¶¶ 21-23; Reply S.M.F. ¶¶ 21-23.)

Richards was diagnosed with malignant mesothelioma at age 71, and died on August 19, 2007. (Supp. S.M.F. ¶ 2; Opp. S.M.F. ¶ 2; A.S.M.F. ¶ 1; Reply S.M.F. ¶ 1.)

---

[1] Goulds asserts that any of its pumps at Great Northern were not insulated, relying on deposition testimony of James Cramps, a former coworker of Richards at Great Northern. (Goulds Supp. S.M.F. ¶ 14.) Cramps states in his deposition that he did not "recall [Goulds pumps] being insulated." (Def.'s Exh. F at 166:2-9.) Plaintiffs deny this statement, citing the deposition testimony of Richards:

Q    Do you recall the names of any of the pumps you worked on?
A    Ingersoll-Rand, Terry, Ingersoll-Rand and Goulds, Nash. That's right off my head.

(Goulds Opp. S.M.F. ¶ 14; Def.'s Exh. E. 37:3-7.) Plaintiffs also cite this testimony in support of additional statement of material fact number 5, which Goulds does not deny. Plaintiffs have made out the prime facie showing that Richards removed and replaced insulation on Goulds pumps, and there is an issue of material fact regarding that element.

2

## II.  DISCUSSION

### A.  Standard of Review

Pursuant to M.R. Civ. P. 56(c), a moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, . . . show that there is no genuine issue as to any material fact set forth in those statements and that [the] party is entitled to a judgment as a matter of law." A party wishing to avoid summary judgment must present a prima facie case for each element of a claim or defense that is asserted. *See Reliance Nat'l Indem. v. Knowles Indus. Svcs.*, 2005 ME 29, ¶ 9, 868 A.2d 220. At this stage, the facts in the summary judgment record are reviewed "in the light most favorable to the nonmoving party." *Lightfoot v. Sch. Admin. Dist. No. 35*, 2003 ME 24, ¶ 6, 816 A.2d 63. A material fact is a fact that has "the potential to affect the outcome of the suit." *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573. "If material facts are disputed, the dispute must be resolved through fact-finding." *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18.

A factual issue is genuine when there is sufficient supporting evidence for the claimed fact that would require a fact-finder to choose between competing versions of the facts at trial. *See Inkel v. Livingston*, 2005 ME 42, ¶ 4, 869 A.2d 745. "Neither party may rely on conclusory allegations or unsubstantiated denials, but must identify specific facts derived from the pleadings, depositions, answers to interrogatories, admissions and affidavits to demonstrate either the existence or absence of an issue of fact." *Kenny v. Dep't of Human Svcs.*, 1999 ME 158, ¶ 3, 740 A.2d 560 (quoting *Vinick v. Comm'r*, 110 F.3d 168, 171 (1st Cir. 1997)).

3

B.    Applicable Law

Plaintiffs' primary causes of action against Goulds are negligence and strict liability.[2] Plaintiffs allege that the use of asbestos insulation on Goulds' pumps was reasonably foreseeable, and that Goulds failed to warn of the reasonable foreseeable dangers associated with the use of its products with asbestos-containing insulation made by third parties. As a result of Goulds' failure to warn the Decedent of those dangers or recommend safety precautions, the Decedent was exposed to harmful asbestos insulation, which caused the Decedent to develop mesothelioma, and ultimately resulted in his death.

"The essential elements of a claim for negligence are duty, breach, proximate causation, and harm." *Baker v. Farrand*, 2011 ME 91, ¶ 11, 26 A.3d 806. A plaintiff must demonstrate that "a violation of the duty to use the appropriate level of care towards another, is the legal cause of harm to" the plaintiff and that the defendant's "conduct [was] a substantial factor in bringing about the harm." *Spickler v. York*, 566 A.2d 1385, 1390 (Me. 1993) (internal citations omitted); *see also Bonin v. Crepeau*, 2005 ME 59, ¶ 10, 873 A.2d 346 (outlining negligence cause of action for supplying a product without adequate warnings to the user); RESTATEMENT (SECOND) OF TORTS § 388 (1965). "Maine's strict liability statute, [14 M.R.S. § 221 (2011)], imposes liability on manufacturers and suppliers who market defective, unreasonably dangerous products," including liability for defects based on the failure to warn of the product's dangers.[3] *See Bernier v. Raymark Indus., Inc.*, 516 A.2d 534, 537 (Me. 1986).

---

[2] In Count I of the complaint, Plaintiffs allege that the negligence of each manufacturer Defendant, including Crane, caused the Decedent's exposure to asbestos, development of mesothelioma, and ultimate death. Plaintiffs also assert strict liability for defective design and condition based on asbestos within the products and the failure to warn of the dangers of asbestos (Count I), civil conspiracy among all the defendants (Count III), gross negligence (Count IV), "aiding and abetting" among the Defendants' negligent and intentional acts (Count V), negligence per se against all defendants based on alleged violations of state and federal law (Count VI), and loss of consortium (Count VII).

[3] In addition, strict liability can attach for a design defect or a defect in the manufacturing process. *See Pottle v. Up-Right, Inc.*, 628 A.2d 672, 674-75 (Me. 1993). Those theories of liability are not at issue in this case.

4

As the asbestos litigation has evolved both nationally and within Maine, the level of proof necessary to establish the requisite relationship between a plaintiff's injuries and a defendant's product has been subject of much debate.[4] A majority of jurisdictions have adopted the standard articulated by the court in *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156 (4th Cir. 1986), where the court construed the "substantial factor" test of the RESTATEMENT (SECOND) OF TORTS.[5] In *Lohrmann*, the court announced and applied the frequency, regularity, and proximity test, which requires a plaintiff to "prove more than a casual or minimum contact with the product" that contains asbestos. 782 F.2d at 1162. Rather, under *Lohrmann*, a plaintiff must present "evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked." *Id.* at 1162-63. *Lohrmann* suggests that the Court engage a quantitative analysis of a party's exposure to asbestos in order to determine whether, as a matter of law, the party can prevail. *See id.* at 1163-64.

Although the Maine Law Court has not addressed the issue, at least one Justice of the Maine Superior Court has expressly rejected the *Lohrmann* standard. Justice Ellen Gorman[6] rejected the *Lohrmann* standard "because it is entirely the jury's function to determine if the conduct of the defendant was a substantial factor in causing the plaintiff's injury and because it is not appropriate for the court to determine whether a plaintiff has proven that a defendant's product proximately caused the harm." *Campbell v. The H.B. Smith Co., Inc.*, Docket No.

---

[4] In their opposition to Goulds' motion for summary judgment, Plaintiffs write that strict liability in Maine requires medical causation and a product nexus in order to prove the necessary link between the alleged defective product and the claimed damages. (Pls.' Opp'n MSJ 4.) Plaintiffs also assert that this "rubric . . . is a departure from the so-called 'frequency, regularity, and proximity test' of *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1157 (4th Cir. 1986)." (Pls.' Opp'n MSJ 4.) Because the Maine Law Court has not addressed the issue in the context of asbestos litigation (Plaintiffs cite other Superior Court decisions as authority for the standard in Maine), the Court will discuss its reasoning for applying a standard other than as articulated in *Lohrmann*.

[5] The RESTATEMENT (SECOND) OF TORTS is consistent with the causation standard in Maine. Section 431 provides in pertinent part that "[t]he actor's negligent conduct is a legal cause of harm to another if . . . his conduct is a substantial factor in bringing about the harm . . ." RESTATEMENT (SECOND) OF TORTS § 431(a).

[6] At the time, Justice Gorman was a member of the Maine Superior Court. Justice Gorman was subsequently appointed to the Maine Supreme Judicial Court.

5

LINSC-CV-2004-57, at 7 (Me. Super. Ct., Lin. Cty., Apr. 2, 2007) (Gorman, J.).[7] In rejecting the *Lohrmann* standard, Justice Gorman wrote that to establish a *prima facie* case, a plaintiff must demonstrate:

> (1) medical causation – that the plaintiff's exposure to the defendant's product was a substantial factor in causing the plaintiff's injury and (2) product nexus – that the defendant's asbestos-containing product was *at the site where plaintiff worked or was present, and that the plaintiff was in proximity to that product at the time it was being used* ... a plaintiff must prove not only that the asbestos products were used at the worksite, but that the employee inhaled the asbestos from the defendant's product.

*Id.* (quoting 63 AM. JUR. 2D *Products Liability* § 70 (2001) (emphasis added)).

Insofar as under *Lohrmann* a plaintiff must prove exposure to asbestos over a sustained period of time while under the standard applied by Justice Gorman a plaintiff must only demonstrate that plaintiff was in proximity to the product at the time that it was being used, the *Lohrmann* standard imposes a higher threshold for claimants. The Court's decision as to the applicable standard cannot, however, be controlled by the standard's degree of difficulty. Instead, the standard must be consistent with basic principles of causation. In this regard, the Court agrees with the essence of Justice Gorman's conclusion – to require a quantitative assessment of a plaintiff's exposure to asbestos, as contemplated by *Lohrmann*, would usurp the fact finder's province. Whether a defendant's conduct caused a particular injury is at its core a question of fact. The Court perceives of no basis in law to deviate from this longstanding legal principle. The Court, therefore, concludes that in order to avoid summary judgment, in addition to producing evidence of medical causation, a plaintiff must establish the product nexus through competent evidence. In particular, a plaintiff must demonstrate (1) that the defendant's product was at the defendant's work place, (2) that the defendant's product contained asbestos, (3) and

---

[7] Justice Gorman also rejected the *Lohrmann* standard for similar reasons in *Boyden v. Tri-State Packing Supply, et al.*, Docket No. CV-04-452 (Me. Super. Ct., Feb. 28, 2007).

6

that the plaintiff had personal contact with the asbestos from the defendant's product. If a plaintiff produces such evidence, which can be either direct or circumstantial, the question of whether the defendant's product was a "substantial factor" in causing the plaintiff's damages is for the jury.

Thus, to survive the motion for summary judgment, the Plaintiffs must first demonstrate that: (1) Goulds' product was at Great Northern, (2) Goulds' product at Great Northern contained asbestos, and (3) the Decedent had personal contact with asbestos from Goulds' product. "If a plaintiff produces such evidence, which can be either direct or circumstantial, the question of whether the defendant's product was a 'substantial factor' in causing the plaintiff's damages is for the jury." *Rumery v. Garlock Sealing Techs.*, 2009 Me. Super. LEXIS 73, at *8 (Apr. 24, 2009); *see also Addy v. Jenkins, Inc.*, 2009 ME 46, ¶ 19, 969 A.2d 935 ("Proximate cause is generally a question of fact for the jury.").

## C. Product Nexus

In the present case, Plaintiffs have made out a prime facie case for product nexus. As stated above, although disputed, the summary judgment record supports that the Decedent removed and replaced insulation on Goulds pumps.[8] (Supp. S.M.F. ¶ 14; Opp. S.M.F. ¶ 14.) Thus, the Court turns to whether Goulds should be held liable for failing to warn of the dangers of asbestos used in conjunction with its products.

---

[8] Goulds asserts that any of its pumps at Great Northern were not insulated, relying on deposition testimony of James Cramps, a former coworker of Richards at Great Northern. (Goulds Supp. S.M.F. ¶ 14.) Cramps states in his deposition that he did not "recall [Goulds pumps] being insulated." (Def.'s Exh. F at 166:2-9.) Plaintiffs deny this statement, citing the deposition testimony of Richards:

Q    Do you recall the names of any of the pumps you worked on?
A    Ingersoll-Rand, Terry, Ingersoll-Rand and Goulds, Nash. That's right off my head.

(Goulds Opp. S.M.F. ¶ 14; Def.'s Exh. E. 37:3-7.) Plaintiffs also cite this testimony in support of additional statement of material fact number 5, which Goulds does not deny. Plaintiffs have made out the prime facie showing that Richards removed and replaced insulation on Goulds pumps, and there is an issue of material fact regarding that element.

7

D.    Legal Theories of Recovery

Plaintiffs contend that Goulds is liable in both strict liability and negligence.

    1.     *Strict Liability* – 14 M.R.S. § 221

Maine's product liability statute, 14 M.R.S. § 221,[9] lays out the essential elements of the

cause of action asserted against a seller:

(1) the named defendant sold the goods or products;

(2) those goods or products were in a defective condition unreasonably dangerous to the user or consumer or the user or consumer's property;

(3) the plaintiff might reasonably have been expected to use, consume, or be affected by the goods or products;

(4) the defendant was engaged in the business of selling the goods or products;

(5) the goods or products were expected to, and did, reach the user or consumer without significant change in the condition in which they were sold; and

(6) the plaintiff or the plaintiff's property suffered physical harm.

*Burns v. Architectural Doors & Windows.* 2011 ME 61, ¶ 23 n.7, 19 A.3d 823. Plaintiffs

maintain that Goulds' products were defective because Goulds failed to warn of the products'

hazards associated with the asbestos material used in connection with the products. In a

defective product case based on a failure to warn, a plaintiff must also show that "(1) the

defendant had a duty to warn the plaintiff of the product hazard; (2) any actual warning on the

---

[9] In full, the statute provides:

One who sells any goods or products in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to a person whom the manufacturer, seller or supplier might reasonably have expected to use, consume or be affected by the goods, or to his property, if the seller is engaged in the business of selling such a product and it is expected to and does reach the user or consumer without significant change in the condition in which it is sold. This section applies although the seller has exercised all possible care in the preparation and sale of his product and the user or consumer has not bought the product from or entered into any contractual relation with the seller.

14 M.R.S. § 221 (2011).

8

product was inadequate; and (3) the inadequate warning or absence of a warning proximately caused the plaintiff's injury." *See id.* ¶ 23.

Goulds asserts that it cannot be liable for the harm caused by asbestos fiber because Goulds did not manufacture or supply the asbestos and the asbestos was added after the pumps left Goulds' control. Goulds further contends that it has no duty to warn of the dangerous propensities of a third party's products. Plaintiffs counter that they need not show the pumps themselves were defective; Plaintiffs assert that the pumps, when put to the foreseeable use of being wrapped in asbestos insulation, became dangerous and Goulds had a duty to warn of those dangers. Plaintiffs cite *Lorfano v. Dura Stone Steps, Inc.*, 569 A.2d 195 (Me. 1990), for this proposition.[10]

In *Lorfano*, the Law Court stated:

> It is now clear that a product, "although faultlessly made, may nevertheless be deemed 'defective' under the [statute] and subject the supplier thereof to strict liability if it is unreasonably dangerous to place the product in the hands of a user without a suitable warning and the product is supplied and no warning is given."

569 A.2d at 196 (quoting *Canifax v. Hercules Powder Co.*, 46 Cal. Rptr. 552, 558 (Cal. Ct. App. 1965)). Plaintiffs interpret *Lorfano* as to require, under Maine law, a supplier or seller to warn about the dangers of a third party's product when the third party's product is used in conjunction with the supplier or seller's product. Thus, Plaintiff asserts that the pumps at issue were defective because Goulds failed to warn about the dangers of asbestos insulation.

---

[10] Plaintiff also cites *Unicomp v. Elementis Pigments, Inc.*, in which the federal district court cites *Lorfano* for the proposition that "[a] plaintiff need not show, in a cause of action based on failure to warn, that the product is itself defective." No. 97-55-P-H, 1999 U.S. Dist. LEXIS 22250, at *69 (D. Me. Feb. 10, 1999). This statement is inaccurate and based on a gross oversimplification of products liability law. In a duty to warn case, the product is defective *because* of the failure to warn: without instruction regarding the product's use from the manufacturer of the product, latent dangers could harm the uninformed, unwarned user. *See Bernier v. Raymark Indus., Inc.*, 516 A.2d 534, 537-38 (Me. 1986). *Unicomp* combines the concepts of design defect with a failure to warn defect, resulting in an inaccurate statement of the law.

9

The Law Court, however, has only described a manufacturer's duty to warn of dangers that are inherent in the manufacturer's own products. *See Pottle v. Up-Right, Inc.*, 628 A.2d 672, 675 (Me. 1993) ("Strict products liability attaches to a manufacturer when by . . . the failure to provide adequate warnings about its hazards, a product is sold in a condition unreasonably dangerous to the user."; *Bernier,* 516 A.2d at 537 (discussing whether "a manufacturer's actual or constructive knowledge of his product's danger" is relevant (emphasis added)); *cf. Bouchard v. Am. Orthodontics*, 661 A.2d 1143, 1145 (Me. 1995) (rejecting plaintiff's argument that "the supplier of a safe product has a duty to warn against another supplier's dangerous product" as unsupported by legal authority or the evidence in the record). The Law Court has thus never directly held that a manufacturer of a product has a duty to warn of dangers inherent in a third party's product.

The issue is whether given its prior comment on the scope of the duty to warn, the Law Court would impose a duty upon manufacturers to warn of dangers that might be inherent in products that are used in conjunction with the manufacturer's product. Courts in some other jurisdictions have recently concluded that an equipment manufacturer is under no obligation to warn of the dangers of asbestos insulation that might be used in conjunction with the manufacturer's product. *See O'Neil v. Crane Co.*, 53 Cal. 4th 335 (Cal. 2012); *Braaten v. Saberhagen Holdings*, 198 P.3d 493 (Wash. 2008); *Simonetta v. Viad Corp.*, 197 P.3d 127 (Wash. 2008). Such a conclusion arguably would be consistent with the Law Court's focus in *Pottle* upon the hazards of the manufacturer's product.

In addition, to hold a manufacturer strictly liable for a defect in another party's product would be contrary to the purpose of strict liability. Strict products liability attaches to a seller (or manufacturer), in part, because of the seller's superior knowledge of the attributes and risks of

10

his own product. *See Bernier*, 516 A.2d at 538 (holding that the manufacturer's knowledge of the dangers of its own product is relevant in establishing a duty to warn).

> [T]he justification for the strict liability has been said to be that the seller, by marketing his product for use and consumption, has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it; that the public has the right to and does expect, in the case of products which it needs and for which it is forced to rely upon the seller, that reputable sellers will stand behind their goods; that public policy demands that the burden of accidental injuries caused by products intended for consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained; and that the consumer of such products is entitled to the maximum of protection at the hands of someone, and the proper persons to afford it are those who market the products.

RESTATEMENT (SECOND) OF TORTS § 402A cmt. c (1965).[11] Holding sellers responsible for the dangerous characteristics of their own products places the burden on the appropriate party.

The Court believes that the Law Court's prior decisions as to the scope of a manufacturer's duty, and sound public policy (i.e., a manufacture is appropriately responsible for any dangers inherent in *its* product) militate against the adoption of a general rule that requires a manufacture to warn about the hazards of a product that might be used in connection with the manufacturer's product.[12]

Nevertheless, the Court is not prepared to enter summary judgment at this time. The record generates an issue as to whether the Court should recognize an exception to the general rule that a manufacturer of a product is not required to warn of dangers inherent in another's product. More specifically, the issue is whether the same policy considerations that support the general rule justify the imposition of a duty to warn of another's product where a manufacturer's product *must* incorporate another's product in order to have any practical use for the intended

---

[11] Maine's strict liability statute is derived from section 402A of the RESTATEMENT (SECOND) OF TORTS. *See Bernier*, 516 A.2d at 537-38 (relying on the comments to section 402A in interpreting Maine's strict liability statute).

[12] This is consistent with this Court's decision regarding Defendant Foster Wheeler in *Rumery v. Garlock Sealing Techs., Inc.* (Me. Super. Ct., Cum. Cty., April 24, 2009).

11

user, and the other's product is inherently dangerous, and the manufacturer knew or should have known of the hazards inherent in the other's product. Because the state of the record on this issue is uncertain, and because the parties have not directly addressed the issue, the Court will deny Goulds' motion for summary judgment. However, the Court will confer with the parties to determine whether further briefing on or consideration of Goulds' request for summary judgment is warranted. The Court, therefore, will schedule a telephonic conference with the parties to discuss the future course of the case.

2.    *Negligence*

Plaintiffs' negligence claim is based on Goulds' alleged breach of its duty to warn of the dangers of the asbestos containing insulation. In negligence, the duty of a manufacturer to warn of the dangers of its products is similar to the duty to warn in strict products liability actions. *See Bernier*, 516 A.2d at 540 ("A strict liability failure-to-warn case does resemble a negligence action because the reasonableness of the manufacturer's conduct is the critical issue.") The Law Court has applied the section 388 of the RESTATEMENT (SECOND) OF TORTS to negligence actions for the breach of a duty to warn of dangerous propensities of products:

> One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
>
>> (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
>>
>> (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
>>
>> (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

*Bonin*, 2005 ME 59, ¶ 10, 873 A.2d 346 (quoting RESTATEMENT (SECOND) OF TORTS § 388).

12

In their written submissions, the parties understandably do not distinguish between the duty to warn in strict liability or the duty to warn in negligence.[12] Indeed, the Court perceives no appreciable difference between a manufacturer's duty to warn in strict liability and negligence. As explained above, therefore, the Court determines that summary judgment on the duty issue is not appropriate at this time.[13]

III.  CONCLUSION

Based on the foregoing analysis, the Court denies Goulds' motion for summary judgment. As set forth in this Decision and Order, the Court will schedule a conference with the parties to discuss the future course of the case, including the extent to which further consideration of Goulds' request for summary judgment is warranted.

Pursuant to M.R. Civ. P. 79(a), the Clerk shall incorporate this Decision and Order into the docket by reference.

Date: 4/5/12

_____
Justice, Maine Business & Consumer Court

---

[12] Many of the recent actions brought in negligence based on the duty to warn involve the failure to warn a minor of dangerous propensities in a product. *Compare Bonin*, 2005 ME 59, ¶ 1 873 A.2d 346 (articulating the issue as "whether [the defendant] may be found negligent for supplying dangerous machinery to a minor"), *and Dickinson v. Clark*, 2001 ME 49, ¶ 9, 767 A.2d 303 (discussing whether the dangers of a wood splitter would be obvious to a teenager in evaluating whether the supplier had a duty to warn), *with Cuthbertson v. Clark Equip. Co.*, 48 A.2d 315 (Me. 1982) (applying section 388 to a supplier of farm equipment after the death of an adult operator).

[13] In their Complaint, Plaintiffs do not limit their negligent theories to the alleged failure to warn. For instance, Plaintiffs allege that the Defendants failed "to properly test said asbestos-containing products or machinery before they were released for consumer use." (Compl. ¶ 31(g).) However, based on the summary judgment filings, the Court understands that the theory of liability against all of the Defendants in this case is based on exposure to asbestos from exterior insulation, and not from internal components or packing materials. The Court anticipates discussing the scope of Plaintiffs' negligence claim with the parties during the telephonic conference referenced herein.

13

STATE OF MAINE
CUMBERLAND, ss

BUSINESS AND CONSUMER COURT
Location: Portland
Docket No.: BCD-CV-10-19

GWENDOLYN RICHARDS, Individually
and as Personal Representative of the
ESTATE OF AUSTIN RICHARDS, JEAN
ANN NOONAN, JEFFREY RICHARDS,
JERRY RICHARDS, and JOEL
RICHARDS,

               Plaintiffs,

    v.

ARMSTRONG INTERNATIONAL, INC.,
CRANE CO., DATRON INC.
LIQUIDATING TRUST, GOULDS
PUMPS, INC., and NASH ENGINEERING
CO.,

               Defendants

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**DECISION AND ORDER**
(Crane Co.)

In this action, Plaintiffs seek to recover damages allegedly resulting from the death of

Austin Richards (the Decedent) due to his exposure to asbestos during the course of his

employment at the Great Northern Paper Company (Great Northern). Plaintiffs allege that as a

result of exposure to asbestos insulation used with products manufactured by each of the

Defendants, the Decedent contracted mesothelioma, which resulted in his death. The matter is

before the Court on the summary judgment motion of Defendant Crane Co., individually and as

the successor-in-interest to Chapman Valve Co. and Jenkins Valves (collectively, "Crane").

I.     BACKGROUND

Except where noted, the following facts in the summary judgment record are not in

dispute. *See F.R. Carroll, Inc. v. TD Bank, N.A.*, 2010 ME 115, ¶ 2, 8 A.3d 646, 647.

1

The Decedent was employed at Great Northern from 1950 to 1953 and 1956 to 1987. (Supp. S.M.F. ¶ 3; Opp. S.M.F. ¶ 3.)[1] Plaintiffs allege that the Decedent was exposed to asbestos and asbestos-containing products while working at Great Northern. (Supp. S.M.F. ¶ 1; Opp. S.M.F. ¶ 1.) In his capacity as a mason's helper and mason, the Decedent was involved in applying and removing asbestos insulation from pipes and equipment at Great Northern. (Supp. S.M.F. ¶¶ 5-6; Opp. S.M.F. ¶¶ 5-6; A.S.M.F. ¶ 3; Reply S.M.F. ¶ 3.) He did not install, nor do any maintenance on, valves while employed at Great Northern. (Supp. S.M.F. ¶¶ 10-11; Opp. S.M.F. ¶¶ 10-11; A.S.M.F. ¶ 7; Reply S.M.F. ¶ 7.)

The summary judgment record supports the presence of Crane Co. valves, Jenkins valves, and Chapman valves at Great Northern during the period that the Decedent worked there as a mason.[2] (Supp. S.M.F. ¶ 7; Opp. S.M.F. ¶ 7; A.S.M.F. ¶¶ 12-13; Reply S.M.F. ¶¶ 12-13.) It is undisputed that valves arrived at Great Northern as bare steel. (Supp. S.M.F. ¶ 15; Opp. S.M.F. ¶ 15.) The parties vigorously dispute whether there is sufficient, admissible evidence to support the assertion that the Decedent specifically applied and removed asbestos insulation from Crane Co., Jenkins, or Chapman valves. (*See* Supp. S.M.F. ¶¶ 4, 8-9; Opp. S.M.F. ¶¶ 4, 8-9; A.S.M.F. ¶ 6; Reply S.M.F. ¶ 6.) The parties also dispute the extent to which Crane Co. recommended the use of asbestos insulation with its products, and whether these recommendations were made to Great Northern.[3] (*See* A.S.M.F. ¶¶ 19-24; Reply S.M.F. ¶¶ 19-24.)

---

[1] Plaintiffs qualified this statement to note that the Decedent worked at Great Northern Paper Mill (Great Northern) until 1987. (Opp. S.M.F. ¶ 3.)

[2] Crane suggests in its reply statement of material facts that the only Crane Co. products that Crane Co. shipped to Great Northern were four ball valves in 1981. (*See* Reply S.M.F. ¶¶ 16-31.)

[3] Several of Plaintiffs' statements of material fact include references to asbestos containing packing materials or gaskets sold by Crane. (*See* A.S.M.F. ¶¶ 16-19, 21-23, 25, 29-30.) Crane objects to these statements as irrelevant to the present motion because Plaintiffs' theory of liability is that the Decedent's exposure to exterior asbestos insulation caused his illness. (*See* Obj. to A.S.M.F. ¶¶ 16-19, 21, 25, 29-30.)

2

Crane Co. acquired the Jenkins line of valves in an asset purchase in the early 1990s when Jenkins was in bankruptcy, but did not acquire the liabilities of Jenkins.[4] (Supp. S.M.F. ¶¶ 16-17, 20; Opp. S.M.F. ¶¶ 16-17, 20.)

The Decedent was diagnosed with malignant mesothelioma at age 71 and passed away on August 19, 2007. (A.S.M.F. ¶ 1; Reply S.M.F. ¶ 1.)

## II.    DISCUSSION

### A.    Standard of Review

Pursuant to M.R. Civ. P. 56(c), a moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, . . . show that there is no genuine issue as to any material fact set forth in those statements and that [the] party is entitled to a judgment as a matter of law." A party wishing to avoid summary judgment must present a prima facie case for each element of a claim or defense that is asserted. *See Reliance Nat'l Indem. v. Knowles Indus. Svcs.*, 2005 ME 29, ¶ 9, 868 A.2d 220. At this stage, the facts in the summary judgment record are reviewed "in the light most favorable to the nonmoving party." *Lightfoot v. Sch. Admin. Dist. No. 35*, 2003 ME 24, ¶ 6, 816 A.2d 63. A material fact is a fact that has "the potential to affect the outcome of the suit." *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573. "If material facts are disputed, the dispute must be resolved through fact-finding." *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18.

A factual issue is genuine when there is sufficient supporting evidence for the claimed fact that would require a fact-finder to choose between competing versions of the facts at trial. *See Inkel v. Livingston*, 2005 ME 42, ¶ 4, 869 A.2d 745. "Neither party may rely on conclusory

---

[4] Plaintiffs assert there is a genuine issue of material fact regarding whether Crane Co. acquired the liabilities of Jenkins, but they have not asserted in their statement of material facts or otherwise established by record evidence to support their contrary viewpoint. *See Kenny v. Dep't of Human Svcs.*, 1999 ME 158, ¶ 3, 740 A.2d 560. Crane has assumed for purposes of the motion that Crane Co. is responsible for both the Crane and Chapman lines of valves. (Crane MSJ 2 n.2, 11-14.)

3

allegations or unsubstantiated denials, but must identify specific facts derived from the pleadings, depositions, answers to interrogatories, admissions and affidavits to demonstrate either the existence or absence of an issue of fact." *Kenny v. Dep't of Human Svcs.*, 1999 ME 158, ¶ 3, 740 A.2d 560 (quoting *Vinick v. Comm'r*, 110 F.3d 168, 171 (1st Cir. 1997)).

## B. Applicable Law

Plaintiffs' primary causes of action against Crane are negligence and strict liability.[5] Plaintiffs allege that the use of asbestos insulation on Crane's valves and the valves of its predecessors-in-interest was reasonably foreseeable, and that Crane was negligent in the manufacture and sale of its products in part because Crane failed to warn of the reasonable foreseeable dangers associated with the use of its products with asbestos-containing insulation made by third parties. As a result, the Decedent allegedly was exposed to harmful asbestos insulation, which caused Decedent to develop mesothelioma and ultimately resulted in his death.

"The essential elements of a claim for negligence are duty, breach, proximate causation, and harm." *Baker v. Farrand*, 2011 ME 91, ¶ 11, 26 A.3d 806. A plaintiff must demonstrate that "a violation of the duty to use the appropriate level of care towards another, is the legal cause of harm to" the plaintiff and that the defendant's "conduct [was] a substantial factor in bringing about the harm." *Spickler v. York*, 566 A.2d 1385, 1390 (Me. 1993) (internal citations omitted); *see also Bonin v. Crepeau*, 2005 ME 59, ¶ 10, 873 A.2d 346 (outlining negligence cause of action for supplying a product without adequate warnings to the user); RESTATEMENT (SECOND) OF TORTS § 388 (1965). "Maine's strict liability statute, [14 M.R.S. § 221 (2011)],

---

[5] In Count I of the complaint, Plaintiffs allege that the negligence of each manufacturer Defendant, including Crane, caused the Decedent's exposure to asbestos, development of mesothelioma, and ultimate death. Plaintiffs also assert strict liability for defective design and condition based on asbestos within the products and the failure to warn of the dangers of asbestos (Count I), civil conspiracy among all the defendants (Count III), gross negligence (Count IV), "aiding and abetting" among the Defendants' negligent and intentional acts (Count V), negligence per se against all defendants based on alleged violations of state and federal law (Count VI), and loss of consortium (Count VII).

4

imposes liability on manufacturers and suppliers who market defective, unreasonably dangerous products," including liability for defects based on the failure to warn of the product's dangers.[6] *See Bernier v. Raymark Indus., Inc.*, 516 A.2d 534, 537 (Me. 1986).

As the asbestos litigation has evolved both nationally and within Maine, the level of proof necessary to establish the requisite relationship between a plaintiff's injuries and a defendant's product has been subject of much debate.[7] A majority of jurisdictions have adopted the standard articulated by the court in *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156 (4th Cir. 1986), where the court construed the "substantial factor" test of the RESTATEMENT (SECOND) OF TORTS.[8] In *Lohrmann*, the court announced and applied the frequency, regularity, and proximity test, which requires a plaintiff to "prove more than a casual or minimum contact with the product" that contains asbestos. 782 F.2d at 1162. Rather, under *Lohrmann*, a plaintiff must present "evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked." *Id.* at 1162-63. *Lohrmann* suggests that the Court engage a quantitative analysis of a party's exposure to asbestos in order to determine whether, as a matter of law, the party can prevail. *See id.* at 1163-64.

Although the Maine Law Court has not addressed the issue, at least one Justice of the Maine Superior Court has expressly rejected the *Lohrmann* standard. Justice Ellen Gorman[9]

---

[6] In addition, strict liability can attach for a design defect or a defect in the manufacturing process. *See Pottle v. Up-Right, Inc.*, 628 A.2d 672, 674-75 (Me. 1993). Those theories of liability are not at issue in this case.

[7] In their opposition to Crane's motion for summary judgment, Plaintiffs write that strict liability in Maine requires medical causation and a product nexus in order to prove the necessary link between the alleged defective product and the claimed damages. (Pls.' Opp'n MSJ 6.) Plaintiffs also assert that this "rubric . . . is a departure from the so-called 'frequency, regularity, and proximity test' of *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1157 (4th Cir. 1986)." (Pls.' Opp'n MSJ 6.) Because the Maine Law Court has not addressed the issue in the context of asbestos litigation (Plaintiffs cite other Superior Court decisions as authority for the standard in Maine), the Court will discuss its reasoning for applying a standard other than as articulated in *Lohrmann*.

[8] The RESTATEMENT (SECOND) OF TORTS is consistent with the causation standard in Maine. Section 431 provides in pertinent part that "[t]he actor's negligent conduct is a legal cause of harm to another if . . . his conduct is a substantial factor in bringing about the harm . . ." RESTATEMENT (SECOND) OF TORTS § 431(a).

[9] At the time, Justice Gorman was a member of the Maine Superior Court. Justice Gorman was subsequently appointed to the Maine Supreme Judicial Court.

5

rejected the *Lohrmann* standard "because it is entirely the jury's function to determine if the conduct of the defendant was a substantial factor in causing the plaintiff's injury and because it is not appropriate for the court to determine whether a plaintiff has proven that a defendant's product proximately caused the harm." *Campbell v. The H.B. Smith Co., Inc.*, Docket No. LINSC-CV-2004-57, at 7 (Me. Super. Ct., Lin. Cty., Apr. 2, 2007) (Gorman, J.).[10] In rejecting the *Lohrmann* standard, Justice Gorman wrote that to establish a *prima facie* case, a plaintiff must demonstrate:

> (1) medical causation – that the plaintiff's exposure to the defendant's product was a substantial factor in causing the plaintiff's injury and (2) product nexus – that the defendant's asbestos-containing product was *at the site where plaintiff worked or was present, and that the plaintiff was in proximity to that product at the time it was being used* ... a plaintiff must prove not only that the asbestos products were used at the worksite, but that the employee inhaled the asbestos from the defendant's product.

*Id.* (quoting 63 AM. JUR. 2D *Products Liability* § 70 (2001) (emphasis added)).

Insofar as under *Lohrmann* a plaintiff must prove exposure to asbestos over a sustained period of time while under the standard applied by Justice Gorman a plaintiff must only demonstrate that plaintiff was in proximity to the product at the time that it was being used, the *Lohrmann* standard imposes a higher threshold for claimants. The Court's decision as to the applicable standard cannot, however, be controlled by the standard's degree of difficulty. Instead, the standard must be consistent with basic principles of causation. In this regard, the Court agrees with the essence of Justice Gorman's conclusion – to require a quantitative assessment of a plaintiff's exposure to asbestos, as contemplated by *Lohrmann*, would usurp the fact finder's province. Whether a defendant's conduct caused a particular injury is at its core a question of fact. The Court perceives of no basis in law to deviate from this longstanding legal

---

[10] Justice Gorman also rejected the *Lohrmann* standard for similar reasons in *Boyden v. Tri-State Packing Supply, et al.*, Docket No. CV-04-452 (Me. Super. Ct., Feb. 28, 2007).

6

principle. The Court, therefore, concludes that in order to avoid summary judgment, in addition to producing evidence of medical causation, a plaintiff must establish the product nexus through competent evidence. In particular, a plaintiff must demonstrate (1) that the defendant's product was at the defendant's work place, (2) that the defendant's product contained asbestos, (3) and that the plaintiff had personal contact with the asbestos from the defendant's product. If a plaintiff produces such evidence, which can be either direct or circumstantial, the question of whether the defendant's product was a "substantial factor" in causing the plaintiff's damages is for the jury.

Thus, to survive the motion for summary judgment, the Plaintiffs must first demonstrate that: (1) Crane's product was at Great Northern, (2) Crane's product at Great Northern contained asbestos, and (3) the Decedent had personal contact with asbestos from Crane's product. "If a plaintiff produces such evidence, which can be either direct or circumstantial, the question of whether the defendant's product was a 'substantial factor' in causing the plaintiff's damages is for the jury." *Rumery v. Garlock Sealing Techs.*, 2009 Me. Super. LEXIS 73, at *8 (Apr. 24, 2009); *see also Addy v. Jenkins, Inc.*, 2009 ME 46, ¶ 19, 969 A.2d 935 ("Proximate cause is generally a question of fact for the jury.").

C.      Product Nexus

In the present case, Plaintiffs are seeking damages for the Decedent's exposure to asbestos material used in connection with Crane's products at Great Northern. Plaintiffs assert that the Decedent's deposition establishes that he removed and replaced insulation on Crane Co., Chapman, and Jenkins valves. (Crane Opp. S.M.F. ¶ 9.) The deposition contains conflicting testimony regarding all three types of valves. The deposition includes the following exchange:

Q      And what names do you recall from the valves that you put insulation on and took insulation off of?

7

You mentioned Yarway, any others?

A    Yarnell, Chapman, Ingersoll-Rand. That's all I can recollect right now.

(Def.'s Exh. A (hereinafter, "Richards Depo.") 41:9-13.) The Decedent was subsequently questioned about a list of other valve manufacturers, referred to as Exhibit 2, which he prepared with former Great Northern co-workers who "helped him remember" the manufacturers of valves and pumps at the mill.[11] (Richards Depo. 273:25-274:7.)

Q    Let me ask you this. In looking at that list of product that you had written down there, are there any that you didn't mention earlier?

Q    Does that refresh your recollection regarding the names of any manufacturers that you had not mentioned previously?

A    On the pumps, Goulds, Ingersoll-Rand. On the traps, Yarway, Nicholson. And the valves I believe Hancock, Jenson[12] and Crane and Fairbanks. That refreshes my mind.

(Richards Depo. 51:19-52:6 (objections omitted).)

Q    Okay. I am going to ask you about a few of the valve products that you listed on Exhibit No. 2. Excuse me.

One of the valves listed there I saw was Crane. Is that a product you personally remember working with?

A    No, sir.

. . . .

Q    And was that a name [referring to Jenkins on Exhibit 2] that you – was that a valve you personally remember working with?

A    No, sir.

. . . .

Q    All right. And is that -- is that a name that you have -- do you have a personal memory of working with a Fairbanks Chapman valve?

A    No, sir. No.

(Richards Depo. 274:24-25; 275:1-2; 276:16-19.)

Crane maintains that the record citations are insufficient to sustain Plaintiffs' claim on two grounds: personal knowledge and the contradiction analysis set forth in *Zip Lube v. Coastal*

---

[11] The names of the former co-workers were set forth in Exhibit 1 at the deposition. (Richards Depo. 49:14-17.)

[12] Plaintiffs assert that the Decedent mistakenly referred to Jenkins as Jenson. (Crane Opp. S.M.F. ¶ 9.)

*Savings Bank*, 1998 ME 81, 709 A.2d 733. Simply stated, the Court finds *Zip Lube* distinguishable given that the contradictory affidavit at issue in *Zip Lube* was created in response to a summary judgment motion; the present situation is an inconsistency within the same deposition. 1998 ME 81, ¶ 10, 709 A.2d 733. The fact that the testimony of a witness includes inconsistent statements is not necessarily unusual and does not automatically invalidate the witness' testimony. The possible inconsistencies in the Decedent's testimony present credibility issues for the fact finder. Additionally, the Decedent's review of a list of valve manufacturers, which list he created with assistance from co-workers, does not render his subsequent testimony as lacking personal knowledge and thus inadmissible. Indeed, M.R. Evid. 612 contemplates that a witness might review a document to refresh the witness's recollection during his testimony. Contrary to Crane's argument, therefore, the record does not establish that the Decedent lacks personal knowledge of the manufacturers of the valves at Great Northern. In short, Plaintiffs have demonstrated the product nexus necessary to avoid summary judgment.

D.  Legal Theories of Recovery

Plaintiffs contend that Crane is liable in both strict liability and negligence.

1.  *Strict Liability* – 14 M.R.S. § 221

Maine's product liability statute, 14 M.R.S. § 221,[13] lays out the essential elements of the cause of action asserted against a seller:

---

[13] In full, the statute provides:

> One who sells any goods or products in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to a person whom the manufacturer, seller or supplier might reasonably have expected to use, consume or be affected by the goods, or to his property, if the seller is engaged in the business of selling such a product and it is expected to and does reach the user or consumer without significant change in the condition in which it is sold. This section applies although the seller has exercised all possible care in the preparation and sale of his product and the user or consumer has not bought the product from or entered into any contractual relation with the seller.

9

(1) the named defendant sold the goods or products;

(2) those goods or products were in a defective condition unreasonably dangerous to the user or consumer or the user or consumer's property;

(3) the plaintiff might reasonably have been expected to use, consume, or be affected by the goods or products;

(4) the defendant was engaged in the business of selling the goods or products;

(5) the goods or products were expected to, and did, reach the user or consumer without significant change in the condition in which they were sold; and

(6) the plaintiff or the plaintiff's property suffered physical harm.

*Burns v. Architectural Doors & Windows.* 2011 ME 61, ¶ 23 n.7, 19 A.3d 823. Plaintiffs maintain that Crane's products were defective because Crane failed to warn of the products' hazards associated with the asbestos material used in connection with the products. In a defective product case based on a failure to warn, a plaintiff must also show that "(1) the defendant had a duty to warn the plaintiff of the product hazard; (2) any actual warning on the product was inadequate; and (3) the inadequate warning or absence of a warning proximately caused the plaintiff's injury." *See id.* ¶ 23.

Crane asserts that because asbestos insulation was added to its valves after they left Crane's control, Plaintiffs can neither show that the valves were unreasonably dangerous to the Decedent nor show that the valves were without significant change from the condition in which they were sold. Plaintiffs counter that they need not show the valves themselves were defective; Plaintiffs assert that the valves, when put to the foreseeable use of being packed in asbestos insulation, became dangerous and Crane had a duty to warn of those dangers. Plaintiffs cite *Lorfano v. Dura Stone Steps, Inc.*, 569 A.2d 195 (Me. 1990), for this proposition.

---

14 M.R.S. § 221 (2011).

10

In *Lorfano*, the Law Court stated:

It is now clear that a product, "although faultlessly made, may nevertheless be deemed 'defective' under the [statute] and subject the supplier thereof to strict liability if it is unreasonably dangerous to place the product in the hands of a user without a suitable warning and the product is supplied and no warning is given."

569 A.2d at 196 (quoting *Canifax v. Hercules Powder Co.*, 46 Cal. Rptr. 552, 558 (Cal. Ct. App. 1965)). Plaintiffs interpret *Lorfano* as to require, under Maine law, a supplier or seller to warn about the dangers of a third party's product when the third party's product is used in conjunction with the supplier or seller's product. Thus, Plaintiffs assert that the valves at issue were defective because Crane failed to warn about the dangers of asbestos insulation.

The Law Court, however, only has described a manufacturer's duty to warn of dangers that are inherent in the manufacturer's own products. *See Pottle v. Up-Right, Inc.*, 628 A.2d 672, 675 (Me. 1993) ("Strict products liability attaches to a manufacturer when by . . . the failure to provide adequate warnings about its hazards, a product is sold in a condition unreasonably dangerous to the user."; *Bernier,* 516 A.2d at 537 (discussing whether "a manufacturer's actual or constructive knowledge of his product's danger" is relevant (emphasis added)); *cf. Bouchard v. Am. Orthodontics*, 661 A.2d 1143, 1145 (Me. 1995) (rejecting plaintiff's argument that "the supplier of a safe product has a duty to warn against another supplier's dangerous product" as unsupported by legal authority or the evidence in the record). The Law Court has never directly held that a manufacturer of a product has a duty to warn of dangers inherent in a third party's product.

The issue is whether given its prior comment on the scope of the duty to warn, the Law Court would impose a duty upon manufacturers to warn of dangers that might be inherent in products that are used in conjunction with the manufacturer's product. Courts in some other jurisdictions have recently concluded that an equipment manufacturer is under no obligation to

11

warn of the dangers of asbestos insulation that might be used in conjunction with the manufacturer's product. *See O'Neil v. Crane Co.*, 53 Cal. 4th 335 (Cal. 2012); *Braaten v. Saberhagen Holdings*, 198 P.3d 493 (Wash. 2008); *Simonetta v. Viad Corp.*, 197 P.3d 127 (Wash. 2008). Such a conclusion arguably would be consistent with the Law Court's focus in *Pottle* upon the hazards of the manufacturer's product.

In addition, to hold a manufacturer strictly liable for a defect in another party's product would be contrary to the purpose of strict liability. Strict products liability attaches to a seller (or manufacturer), in part, because of the seller's superior knowledge of the attributes and risks of his own product. *See Bernier*, 516 A.2d at 538 (holding that the manufacturer's knowledge of the dangers of its own product is relevant in establishing a duty to warn).

> [T]he justification for the strict liability has been said to be that the seller, by marketing his product for use and consumption, has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it; that the public has the right to and does expect, in the case of products which it needs and for which it is forced to rely upon the seller, that reputable sellers will stand behind their goods; that public policy demands that the burden of accidental injuries caused by products intended for consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained; and that the consumer of such products is entitled to the maximum of protection at the hands of someone, and the proper persons to afford it are those who market the products.

RESTATEMENT (SECOND) OF TORTS § 402A cmt. c (1965).[14] Holding sellers responsible for the dangerous characteristics of their own products places the burden on the appropriate party.

The Court believes that the Law Court's prior decisions as to the scope of a manufacturer's duty, and sound public policy (i.e., a manufacture is appropriately responsible for any dangers inherent in *its* product) militate against the adoption of a general rule that requires a

---

[14] Maine's strict liability statute is derived from section 402A of the RESTATEMENT (SECOND) OF TORTS. *See Bernier*, 516 A.2d at 537-38 (relying on the comments to section 402A in interpreting Maine's strict liability statute).

manufacture to warn about the hazards of a product that might be used in connection with the manufacturer's product.

Nevertheless, the Court is not prepared to enter summary judgment at this time. The record generates an issue as to whether the Court should recognize an exception to the general rule that a manufacturer of a product is not required to warn of dangers inherent in another's product. More specifically, the issue is whether the same policy considerations that support the general rule justify the imposition of a duty to warn of another's product where a manufacturer's product *must* incorporate another's product in order to have any practical use for the intended user, and the other's product is inherently dangerous, and the manufacturer knew or should have known of the hazards inherent in the other's product. Because the state of the record on this issue is uncertain, and because the parties have not directly addressed the issue, the Court will deny Crane's motion for summary judgment. However, the Court will confer with the parties to determine whether further briefing on or consideration of Crane's request for summary judgment is warranted. The Court, therefore, will schedule a telephonic conference with the parties to discuss the future course of the case.

2. *Negligence*

Plaintiffs' principal negligence claim is based on Defendant's alleged breach of its duty to warn of the dangers of the asbestos containing insulation. In negligence, the duty of a manufacturer to warn of the dangers of its products is similar to the duty to warn in strict products liability actions. *See Bernier*, 516 A.2d at 540 ("A strict liability failure-to-warn case does resemble a negligence action because the reasonableness of the manufacturer's conduct is the critical issue.") The Law Court has applied section 388 of the RESTATEMENT (SECOND) OF

13

TORTS to negligence actions for the breach of a duty to warn of dangerous propensities of products:

One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

*Bonin*, 2005 ME 59, ¶ 10, 873 A.2d 346 (quoting RESTATEMENT (SECOND) OF TORTS § 388).

In their written submissions, the parties understandably do not distinguish between the duty to warn in strict liability or the duty to warn in negligence.[16] Indeed, the Court perceives no appreciable difference between a manufacturer's duty to warn in strict liability and negligence. As explained above, therefore, the Court determines that summary judgment on the duty issue is not appropriate at this time.[17]

---

[16] Many of the recent actions brought in negligence based on the duty to warn involve the failure to warn a minor of dangerous propensities in a product. *Compare Bonin*, 2005 ME 59, ¶ 1 873 A.2d 346 (articulating the issue as "whether [the defendant] may be found negligent for supplying dangerous machinery to a minor"), *and Dickinson v. Clark*, 2001 ME 49, ¶ 9, 767 A.2d 303 (discussing whether the dangers of a wood splitter would be obvious to a teenager in evaluating whether the supplier had a duty to warn), *with Cuthbertson v. Clark Equip. Co.*, 48 A.2d 315 (Me. 1982) (applying section 388 to a supplier of farm equipment after the death of an adult operator).

[17] In their Complaint, Plaintiffs do not limit their negligent theories to the alleged failure to warn. For instance, Plaintiffs allege that the Defendants failed "to properly test said asbestos-containing products or machinery before they were released for consumer use." (Compl. ¶ 31(g).) In addition, in their statement of material facts, Plaintiffs assert that Crane manufactured asbestos-containing products. However, based on the summary judgment filings, the Court understands that the theory of liability against all of the Defendants in this case is based on exposure to asbestos from exterior insulation, and not from internal components or packing materials. (*See, e.g.*, A.S.M.F. ¶¶ 16- 18.) Further, although Plaintiffs assert Crane sold asbestos insulation, there is no evidence in the record to suggest that Great Northern ever purchased asbestos insulation from Crane Co., Chapman, or Jenkins. The Court anticipates discussing the scope of Plaintiffs' negligence claim with the parties during the telephonic conference referenced herein.

14

III.  CONCLUSION

Based on the foregoing analysis, the Court denies Crane's motion for summary judgment. As set forth in this Decision and Order, the Court will schedule a conference with the parties to discuss the future course of the case, including the extent to which further consideration of Crane's request for summary judgment is warranted.

Pursuant to M.R. Civ. P. 79(a), the Clerk shall incorporate this Decision and Order into the docket by reference.

Date: 4/5/12

_____
Justice, Maine Business & Consumer Court

15

| Parties | Counsel |
|---------|---------|
| Plaintiffs | Daniel Kagan, Esq<br>Berman & Simmons<br>129 Lisbon St. PO Box 961<br>Lewiston ME 04243 |
| Armstrong Internatinal | Francis Lynch Esq.<br>Keegan Werlin<br>265 Franklin Street Ste 600<br>Boston MA 02110 |
| Crane Co. | David McConnell Esq<br>Perkins Thompson<br>One Canal Plaza Ste 900 PO Box 426<br>Portland ME 04112 |
| Goulds Pumps | Jeff Edwards Esq<br>Preti Flaherty<br>One City Center PO Box 9546<br>Portland ME 04112 |
| Nash Engineering | Brita Forssberg Esq<br>Bernstein Shur<br>100 Middle St PO Box 9729<br>Portland ME 04104 |
| Datron | Christine Kennedy Jensen Esq<br>Douglas Denham<br>103 Exchange St PO Box 7108<br>Portland ME 04112 |

STATE OF MAINE
CUMBERLAND, ss

BUSINESS AND CONSUMER COURT
Location: Portland
Docket No.: BCD-CV-10-19
JCN-CUM - 1/23/2013

)
GWENDOLYN RICHARDS, Individually )
and as Personal Representative of the )
ESTATE OF AUSTIN RICHARDS, JEAN )
ANN NOONAN, JEFFREY RICHARDS, )
JERRY RICHARDS, and JOEL )
RICHARDS, )
)
        Plaintiffs, )
)
        v. )
)
ARMSTRONG INTERNATIONAL, INC., )
CRANE CO., DATRON INC. )
LIQUIDATING TRUST, GOULDS )
PUMPS, INC., and NASH ENGINEERING )
CO., )
)
        Defendants )
)

**DECISION AND ORDER**
(Crane Co.)

This matter is before the Court on the renewed motion for summary judgment of

Defendant Crane Co. (Crane). In this action, Plaintiffs seek to recover damages allegedly

resulting from the death of Austin Richards (the Decedent) due to his exposure from asbestos

during the course of his employment at the Great Northern Paper Company (Great Northern).

Plaintiffs allege that as a result of exposure to asbestos insulation used with products

manufactured by each of the Defendants, the Decedent contracted mesothelioma, which resulted

in his death.

I.     PROCEDURAL BACKGROUND

In its original motion for summary judgment, Crane cited two principal bases in support

of its request for judgment. First, Crane argued that Plaintiffs could not establish the requisite

1

product nexus. That is, Crane maintained that Plaintiffs could not demonstrate that the Decedent had sufficient contact with Crane's product to permit a rational fact finder to impose liability upon Crane. Second, Crane argued that summary judgment was appropriate because Crane did not have a duty to warn about the inherent dangers in products that might be used in connection with Crane's products, but were not manufactured by Crane.

Upon review of the summary judgment record, the Court found that Plaintiffs had established a prima facie case for product nexus, and concluded that the factual record generated a possible basis for Plaintiffs to prevail under a duty to warn theory. The Court, therefore, denied Crane's motion for summary judgment.

As to the possible basis for Crane's liability under a duty to warn theory, in its decision denying summary judgment, the Court wrote,

> the issue is whether the same policy considerations that support the general rule [imposing liability on a manufacturer for dangers inherent in its own product] justify the imposition of a duty to warn of another's product where a manufacturer's product *must* incorporate another's product in order to have any practical use for the intended user, and the other's product is inherently dangerous, and the manufacturer knew or should have known of the hazards inherent in the other's product. Because the state of the record on this issue is uncertain, and because the parties have not directly addressed the issue, the Court will deny Crane's motion for summary judgment. However, the Court will confer with the parties to determine whether further briefing on or consideration of Crane's request for summary judgment is warranted. The Court, therefore, will schedule a telephonic conference with the parties to discuss the future course of the case.

(Decision and Order dated April 2, 2012 (hereinafter, "MSJ Decision"), at 13). During a subsequent conference with the parties, Crane requested, and was granted, leave to renew its motion for summary judgment, and to file a supplement memorandum in support of the motion.

2

II.    DISCUSSION

A.    Standard of Review

Pursuant to M.R. Civ. P. 56(c), a moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, . . . show that there is no genuine issue as to any material fact set forth in those statements and that [the] party is entitled to a judgment as a matter of law." A party wishing to avoid summary judgment must present a prima facie case for each element of a claim or defense that is asserted. *See Reliance Nat'l Indem. v. Knowles Indus. Svcs.*, 2005 ME 29, ¶ 9, 868 A.2d 220. At this stage, the facts in the summary judgment record are reviewed "in the light most favorable to the nonmoving party." *Lightfoot v. Sch. Admin. Dist. No. 35*, 2003 ME 24, ¶ 6, 816 A.2d 63. A material fact is a fact that has "the potential to affect the outcome of the suit." *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573. "If material facts are disputed, the dispute must be resolved through fact-finding." *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18.

A factual issue is genuine when there is sufficient supporting evidence for the claimed fact that would "require a fact-finder to choose between competing versions of the truth at trial." *Inkel v. Livingston*, 2005 ME 42, ¶ 4, 869 A.2d 745. "Neither party may rely on conclusory allegations or unsubstantiated denials, but must identify specific facts derived from the pleadings, depositions, answers to interrogatories, admissions and affidavits to demonstrate either the existence or absence of an issue of fact." *Kenny v. Dep't of Human Svcs.*, 1999 ME 158, ¶ 3, 740 A.2d 560 (quoting *Vinick v. Comm'r*, 110 F.3d 168, 171 (1st Cir. 1997)).

B.    Duty to Warn

Plaintiffs contend that Crane had a duty to warn of the dangers of asbestos insulation because the utilization of asbestos insulation with Crane's product was a reasonably foreseeable

3

use of its product that rendered the products dangerous. Plaintiffs assert that Crane had a duty to warn under theories of negligence and strict liability.

1.    *Strict Liability* – 14 M.R.S. § 221

The alleged defect in the present case is the failure to warn of the dangers of asbestos used in connection with Crane's valves. Maine's product liability statute, 14 M.R.S. § 221 (2012),[1] lays out the essential elements of the cause of action asserted against a seller:

(1) the named defendant sold the goods or products;

(2) those goods or products were in a defective condition unreasonably dangerous to the user or consumer or the user or consumer's property;

(3) the plaintiff might reasonably have been expected to use, consume, or be affected by the goods or products;

(4) the defendant was engaged in the business of selling the goods or products;

(5) the goods or products were expected to, and did, reach the user or consumer without significant change in the condition in which they were sold; and

(6) the plaintiff or the plaintiff's property suffered physical harm.

*Burns v. Architectural Doors & Windows*. 2011 ME 61, ¶ 23 n.7, 19 A.3d 823. Further, in a defective product case based on a failure to warn, a plaintiff must also show that "(1) the defendant had a duty to warn the plaintiff of the product hazard; (2) any actual warning on the

---

[1]  In full, the statute provides:

One who sells any goods or products in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to a person whom the manufacturer, seller or supplier might reasonably have expected to use, consume or be affected by the goods, or to his property, if the seller is engaged in the business of selling such a product and it is expected to and does reach the user or consumer without significant change in the condition in which it is sold. This section applies although the seller has exercised all possible care in the preparation and sale of his product and the user or consumer has not bought the product from or entered into any contractual relation with the seller.

14 M.R.S. § 221 (2012).

4

product was inadequate; and (3) the inadequate warning or absence of a warning proximately caused the plaintiff's injury." *Id.* ¶ 23.

Crane asserts that it cannot be liable for the harm caused by asbestos fiber because Crane did not manufacture or supply the asbestos and the asbestos was added after the valves left Crane's control. Crane contends that it has no duty to warn of the dangerous propensities of a third party's products. Plaintiffs counter that they need not show the valves themselves were defective; Plaintiffs assert that the valves, when put to the foreseeable use of being wrapped in asbestos containing material, became dangerous and Crane had a duty to warn of those dangers. Plaintiffs cite *Lorfano v. Dura Stone Steps, Inc.*, 569 A.2d 195 (Me. 1990), for this proposition.

In *Lorfano*, the Law Court stated:

> It is now clear that a product, "although faultlessly made, may nevertheless be deemed 'defective' under the [statute] and subject the supplier thereof to strict liability if it is unreasonably dangerous to place the product in the hands of a user without a suitable warning and the product is supplied and no warning is given."

569 A.2d at 196 (quoting *Canifax v. Hercules Powder Co.*, 46 Cal. Rptr. 552, 558 (Cal. Ct. App. 1965)). Plaintiffs interpret *Lorfano* as to require, under Maine law, a supplier or seller to warn about the dangers of a third party's product when the third party's product is used in conjunction with the supplier or seller's product. Thus, Plaintiffs assert that the valves at issue were defective because Crane failed to warn about the dangers of asbestos insulation. As explained below, given the circumstances in this case, the Court does not believe that Crane was obligated to warn of the dangers of the asbestos containing material.

First, the Law Court has only described a manufacturer's duty to warn in terms of dangers that are inherent in the manufacturer's own products. *See Pottle v. Up-Right, Inc.*, 628 A.2d 672, 675 (Me. 1993) ("Strict products liability attaches to a manufacturer when by . . . the failure to provide adequate warnings about *its hazards*, a product is sold in a condition

5

unreasonably dangerous to the user." (emphasis added)); *Bernier*, 516 A.2d at 537 (discussing whether "a manufacturer's actual or constructive knowledge of *his product's* danger" is relevant (emphasis added)); *cf. Bouchard v. Am. Orthodontics*, 661 A.2d 1143, 1145 (Me. 1995) (rejecting plaintiff's argument that "the supplier of a safe product has a duty to warn against another supplier's dangerous product" as unsupported by legal authority or the evidence in the record). The Law Court has never held that a manufacturer of products has a duty to warn of dangers inherent in a third party's product. The Court notes that this conclusion is consistent with other recent strict liability cases involving the duty of equipment manufacturers to warn of the dangers of asbestos insulation. *See O'Neil v. Crane Co.*, 53 Cal. 4th 335 (Cal. 2012); *Braaten v. Saberhagen Holdings*, 198 P.3d 493 (Wash. 2008); *Simonetta v. Viad Corp.*, 197 P.3d 127 (Wash. 2008).

In addition, holding a manufacturer liable for defects in another party's product is contrary to the purpose of strict liability. Strict products liability attaches to a seller (or manufacturer), in part, because of the seller's superior knowledge of the attributes and risks of its own product. *See Bernier*, 516 A.2d at 538 (holding that the manufacturer's knowledge of the dangers of its own product is relevant in establishing a duty to warn).

> [T]he justification for the strict liability has been said to be that the seller, by marketing his product for use and consumption, has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it; that the public has the right to and does expect, in the case of products which it needs and for which it is forced to rely upon the seller, that reputable sellers will stand behind their goods; that public policy demands that the burden of accidental injuries caused by products intended for consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained; and that the consumer of such products is entitled to the maximum of protection at the hands of someone, and the proper persons to afford it are those who market the products.

6

RESTATEMENT (SECOND) OF TORTS § 402A cmt. c (1965).[2]

The reasoning of the Restatement is sound, and is consistent with the Law Court's decision in *Pottle v. Up-Right, Inc.*, 628 A.2d 672, 675 (Me. 1993) ("Strict products liability attaches to a manufacturer when by . . . the failure to provide adequate warnings about *its hazards*, a product is sold in a condition unreasonably dangerous to the user." (emphasis added)). Indeed, as the Court stated in its Decision and Order, "the Law Court's prior decisions as to the scope of a manufacturer's duty, and sound public policy (i.e., a manufacture[r] is appropriately responsible for any dangers inherent in *its* product) militate against the adoption of a general rule that requires a manufacture[r] to warn about the hazards of a product that might be used in connection with the manufacturer's product." (MSJ Decision 12-13). Nevertheless, as explained in the MSJ Decision, this case and the asbestos litigation generally cause the Court to consider whether

> the same policy considerations that support the general rule justify the imposition of a duty to warn of another's product where a manufacturer's product *must* incorporate another's product in order to have any practical use for the intended user, and the other's product is inherently dangerous, and the manufacturer knew or should have known of the hazards inherent in the other's product.

(MSJ Decision 13).

The question, as posed by the Court in the MSJ Decision, was purposefully narrow. That is, the Court questioned whether a manufacturer should have a duty to warn of danger's inherent in another product where the manufacturer's product *must* use the other product. The Court believes that many of the policy considerations that require a manufacturer to warn of dangers to its product would support the imposition of a duty on a manufacturer to warn of dangers that might be inherent in another product that must be used in order for the manufacturer's product to

---

[2] Maine's strict liability statute is derived from section 402A of the RESTATEMENT (SECOND) OF TORTS. *See Bernier*, 516 A.2d at 537-38 (relying on the comments to section 402A in interpreting Maine's strict liability statute).

7

function properly. In other words, if a product could only function if incorporated with another product, the public could reasonably expect the manufacturer to be aware of the inherent dangers of the other product and to warn of those dangers.

The circumstances under which the law should recognize the duty are, however, limited. To require manufacturers to be aware of and warn of dangers inherent in every product that could be used with, but is not required to be used with, the manufacturer's product would not only be unreasonable, but would be inconsistent with the bases for the imposition of the duty to warn as set forth in the Restatement.

In this case, the Court is not convinced that the duty to warn should be extended to Crane. The record establishes that Crane's valves do not require the external insulation (i.e., the asbestos containing product) in order to function properly. To the contrary, the valves can perform their job regardless of whether the insulation is applied. There is no record evidence to suggest otherwise. Thus, even if the Court were to recognize a basis for requiring the manufacturer of one product to warn of the dangers of another product, the circumstances of this case do not warrant the imposition of a duty upon Crane.

### 2. *Negligence*

In negligence, the duty of a manufacturer to warn of the dangers of its products is similar to the duty to warn in strict products liability actions. *See Bernier*, 516 A.2d at 540 ("A strict liability failure-to-warn case does resemble a negligence action because the reasonableness of the manufacturer's conduct is the critical issue.") The Law Court has applied the section 388 of the RESTATEMENT (SECOND) OF TORTS to negligence actions for the breach of a duty to warn of dangerous propensities of products:

> One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel

8

with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

> (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
>
> (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
>
> (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

*Bonin*, 2005 ME 59, ¶ 10, 873 A.2d 346 (quoting RESTATEMENT (SECOND) OF TORTS § 388).

In their briefing, the parties draw no distinction between the duty to warn in strict liability or the duty to warn in negligence.[3] The Court also sees no appreciable difference between the two and adopts its analysis regarding strict liability duty to warn.

### III.   CONCLUSION

Based on the foregoing analysis, the Court GRANTS Crane Co.'s motion summary judgment and enters judgment in favor of Crane Co. on all counts of Plaintiffs' complaint.

Pursuant to M.R. Civ. P. 79(a), the Clerk shall incorporate this Decision and Order into the docket by reference.

Date: 1/23/13

Justice, Maine Business & Consumer Court

---

[3] Many of the recent actions brought in negligence based on the duty to warn involve the failure to warn a minor of dangerous propensities in a product. *Compare Bonin*, 2005 ME 59, ¶ 1 873 A.2d 346 (articulating the issue as "whether [the defendant] may be found negligent for supplying dangerous machinery to a minor"), *and Dickinson v. Clark*, 2001 ME 49, ¶ 9, 767 A.2d 303 (discussing whether the dangers of a wood splitter would be obvious to a teenager in evaluating whether the supplier had a duty to warn), *with Cuthbertson v. Clark Equip. Co.*, 48 A.2d 315 (Me. 1982) (applying section 388 to a supplier of farm equipment after the death of an adult operator).

9

BCD-CV-10-19

**Gwendolyn Richards, Indiv.**          v.          **Armstrong Int'l et al**
**& as PR of the Estate of Austin**
**Richards et al**

Attorney for Plaintiff:
Daniel Kagan, Esq.
Berman & Simmons
PO Box 961
Lewiston ME  04243-0961

Attorney for Goulds Pumps:
Jeffrey Edwards, Esq
Preti Flaherty
PO Box 9546
Portland ME  04112

Attorney for Crane Co:
David McConnell, Esq.
Perkins Thompson
PO Box 426
Portland ME  04112-0426

STATE OF MAINE
CUMBERLAND, ss

BUSINESS AND CONSUMER COURT
Location: Portland
Docket No.: BCD-CV-10-19

$\mathcal{JLN}$ - CUM - 1/25/2013

)
GWENDOLYN RICHARDS, Individually )
and as Personal Representative of the )
ESTATE OF AUSTIN RICHARDS, JEAN )
ANN NOONAN, JEFFREY RICHARDS, )
JERRY RICHARDS, and JOEL )
RICHARDS, )
)
           Plaintiffs, )
)
    v. )
)
ARMSTRONG INTERNATIONAL, INC., )
CRANE CO., DATRON INC. )
LIQUIDATING TRUST, GOULDS )
PUMPS, INC., and NASH ENGINEERING )
CO., )
)
           Defendants )
)

**DECISION AND ORDER**
(Goulds Pumps, Inc.)

This matter is before the Court on the renewed motion for summary judgment of Defendant Goulds Pumps, Inc. (Goulds). In this action, Plaintiffs seek to recover damages allegedly resulting from the death of Austin Richards (the Decedent) due to his exposure from asbestos during the course of his employment at the Great Northern Paper Company (Great Northern). Plaintiffs allege that as a result of exposure to asbestos insulation used with products manufactured by each of the Defendants, the Decedent contracted mesothelioma, which resulted in his death.

I.    PROCEDURAL BACKGROUND

In its original motion for summary judgment, Goulds cited two principal bases in support of its request for judgment. First, Goulds argued that Plaintiffs could not establish the requisite product nexus. That is, Goulds maintained that Plaintiffs could not demonstrate that the

1

Decedent had sufficient contact with Goulds' product to permit a rational fact finder to impose liability upon Goulds. Goulds also argued that summary judgment was appropriate because Goulds did not have a duty to warn about the dangers that might be inherent in products that might be used in connection with Goulds' product.

Upon review of the summary judgment record, the Court found that Plaintiffs had established a prima facie case for product nexus, and concluded that the factual record generated a possible basis for Plaintiffs to prevail under a duty to warn theory. The Court, therefore, denied Goulds' motion for summary judgment.

As to the possible basis for Goulds' liability under a duty to warn theory, in its decision denying summary judgment, the Court wrote,

> the issue is whether the same policy considerations that support the general rule [imposing liability on a manufacturer for dangers inherent in its own product] justify the imposition of a duty to warn of another's product where a manufacturer's product *must* incorporate another's product in order to have any practical use for the intended user, and the other's product is inherently dangerous, and the manufacturer knew or should have known of the hazards inherent in the other's product. Because the state of the record on this issue is uncertain, and because the parties have not directly addressed the issue, the Court will deny Goulds' motion for summary judgment. However, the Court will confer with the parties to determine whether further briefing on or consideration of Goulds' request for summary judgment is warranted.

(Decision and Order dated April 5, 2012 (hereinafter, "MSJ Decision"), at 11-12). During a subsequent conference with the parties, Goulds requested, and was granted, leave to renew its motion for summary judgment, and to file a supplement memorandum in support of the motion.

II.   DISCUSSION

A.   Standard of Review

Pursuant to M.R. Civ. P. 56(c), a moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, . . . show that there is no genuine issue as to any material fact set forth in those

2

statements and that [the] party is entitled to a judgment as a matter of law." A party wishing to avoid summary judgment must present a prima facie case for each element of a claim or defense that is asserted. *See Reliance Nat'l Indem. v. Knowles Indus. Svcs.*, 2005 ME 29, ¶ 9, 868 A.2d 220. At this stage, the facts in the summary judgment record are reviewed "in the light most favorable to the nonmoving party." *Lightfoot v. Sch. Admin. Dist. No. 35*, 2003 ME 24, ¶ 6, 816 A.2d 63. A material fact is a fact that has "the potential to affect the outcome of the suit." *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573. "If material facts are disputed, the dispute must be resolved through fact-finding." *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18.

A factual issue is genuine when there is sufficient supporting evidence for the claimed fact that would require a fact-finder to choose between competing versions of the facts at trial. *See Inkel v. Livingston*, 2005 ME 42, ¶ 4, 869 A.2d 745. "Neither party may rely on conclusory allegations or unsubstantiated denials, but must identify specific facts derived from the pleadings, depositions, answers to interrogatories, admissions and affidavits to demonstrate either the existence or absence of an issue of fact." *Kenny v. Dep't of Human Svcs.*, 1999 ME 158, ¶ 3, 740 A.2d 560 (quoting *Vinick v. Comm'r*, 110 F.3d 168, 171 (1st Cir. 1997)).

B.    Duty to Warn

Plaintiffs contend that Goulds had a duty to warn of the dangers of asbestos insulation because the utilization of asbestos insulation with Goulds's product was a reasonably foreseeable use of its product that rendered the products dangerous. Plaintiffs assert that Goulds had a duty to warn under theories of negligence and strict liability.

1.    *Strict Liability* – 14 M.R.S. § 221

3

The alleged defect in the present case is the failure to warn of the dangers of asbestos used to insulate Goulds' pumps. Maine's product liability statute, 14 M.R.S. § 221 (2012),[1] lays out the essential elements of the cause of action asserted against a seller:

(1) the named defendant sold the goods or products;

(2) those goods or products were in a defective condition unreasonably dangerous to the user or consumer or the user or consumer's property;

(3) the plaintiff might reasonably have been expected to use, consume, or be affected by the goods or products;

(4) the defendant was engaged in the business of selling the goods or products;

(5) the goods or products were expected to, and did, reach the user or consumer without significant change in the condition in which they were sold; and

(6) the plaintiff or the plaintiff's property suffered physical harm.

*Burns v. Architectural Doors & Windows.* 2011 ME 61, ¶ 23 n.7, 19 A.3d 823. Further, in a defective product case based on a failure to warn, a plaintiff must also show that "(1) the defendant had a duty to warn the plaintiff of the product hazard; (2) any actual warning on the product was inadequate; and (3) the inadequate warning or absence of a warning proximately caused the plaintiff's injury." *See id.* ¶ 23.

Goulds asserts that it cannot be liable for the harm caused by asbestos fiber because Goulds did not manufacture or supply the asbestos and the asbestos was added after the pumps left Goulds's control. Goulds contends that it has no duty to warn of the dangerous propensities

---

[1] In full, the statute provides:

One who sells any goods or products in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to a person whom the manufacturer, seller or supplier might reasonably have expected to use, consume or be affected by the goods, or to his property, if the seller is engaged in the business of selling such a product and it is expected to and does reach the user or consumer without significant change in the condition in which it is sold. This section applies although the seller has exercised all possible care in the preparation and sale of his product and the user or consumer has not bought the product from or entered into any contractual relation with the seller.

14 M.R.S. § 221 (2012).

4

of a third party's products. Plaintiffs counter that they need not show the pumps themselves were defective; Plaintiffs assert that the pumps, when put to the foreseeable use of being wrapped in asbestos insulation, became dangerous and Goulds had a duty to warn of those dangers. Plaintiffs cite *Lorfano v. Dura-Stone Steps, Inc.*, 569 A.2d 195 (Me. 1990), for this proposition.

In *Lorfano*, the Law Court stated:

> It is now clear that a product, "although faultlessly made, may nevertheless be deemed 'defective' under the [statute] and subject the supplier thereof to strict liability if it is unreasonably dangerous to place the product in the hands of a user without a suitable warning and the product is supplied and no warning is given."

569 A.2d at 196 (quoting *Canifax v. Hercules Powder Co.*, 46 Cal. Rptr. 552, 558 (Cal. Ct. App. 1965)). Plaintiffs interpret *Lorfano* as to require, under Maine law, a supplier or seller to warn about the dangers of a third party's product when the third party's product is used in conjunction with the supplier or seller's product. Thus, Plaintiff asserts that the pumps at issue were defective because Goulds failed to warn about the dangers of asbestos insulation. As explained below, the Court does not believe that Goulds was obligated to warn of the dangers of the asbestos containing material.

First, the Law Court has only described a manufacturer's duty to warn in terms of dangers that are inherent in the manufacturer's own products. *See Pottle v. Up-Right, Inc.*, 628 A.2d 672, 675 (Me. 1993) ("Strict products liability attaches to a manufacturer when by . . . the failure to provide adequate warnings about *its hazards*, a product is sold in a condition unreasonably dangerous to the user." (emphasis added)); *Bernier*, 516 A.2d at 537 (discussing whether "a manufacturer's actual or constructive knowledge of *his product's* danger" is relevant (emphasis added)); *cf. Bouchard v. Am. Orthodontics*, 661 A.2d 1143, 1145 (Me. 1995) (rejecting plaintiff's argument that "the supplier of a safe product has a duty to warn against

5

another supplier's dangerous product" as unsupported by legal authority or the evidence in the record). The Law Court has never held that a manufacturer of products has a duty to warn of dangers inherent in a third party's product. The Court notes that this conclusion is consistent with other recent strict-liability cases involving the duty of equipment manufacturers to warn of the dangers of asbestos insulation. *See O'Neil v. Crane Co.*, 53 Cal. 4th 335 (Cal. 2012); *Braaten v. Saberhagen Holdings*, 198 P.3d 493 (Wash. 2008); *Simonetta v. Viad Corp.*, 197 P.3d 127 (Wash. 2008).

In addition, holding a manufacturer liable for defects in another party's product is contrary to the purpose of strict liability. Strict products liability attaches to a seller (or manufacturer), in part, because of the seller's superior knowledge of the attributes and risks of its own product. *See Bernier*, 516 A.2d at 538 (holding that the manufacturer's knowledge of the dangers of its own product is relevant in establishing a duty to warn).

> [T]he justification for the strict liability has been said to be that the seller, by marketing his product for use and consumption, has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it; that the public has the right to and does expect, in the case of products which it needs and for which it is forced to rely upon the seller, that reputable sellers will stand behind their goods; that public policy demands that the burden of accidental injuries caused by products intended for consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained; and that the consumer of such products is entitled to the maximum of protection at the hands of someone, and the proper persons to afford it are those who market the products.

RESTATEMENT (SECOND) OF TORTS § 402A cmt. c (1965).[2]

The reasoning of the Restatement is sound, and is consistent with the Law Court's decision in *Pottle v. Up-Right, Inc.*, 628 A.2d 672, 675 (Me. 1993) ("Strict products liability attaches to a manufacturer when by . . . the failure to provide adequate warnings about *its*

---

[2] Maine's strict liability statute is derived from section 402A of the RESTATEMENT (SECOND) OF TORTS. *See Bernier*, 516 A.2d at 537-38 (relying on the comments to section 402A in interpreting Maine's strict liability statute).

6

*hazards*, a product is sold in a condition unreasonably dangerous to the user." (emphasis added)).

Indeed, as the Court stated in its Decision and Order, "the Law Court's prior decisions as to the scope of a manufacturer's duty, and sound public policy (i.e., a manufacturer is appropriately responsible for any dangers inherent in *its* product) militate against the adoption of a general rule that requires a manufacturer to warn about the hazards of a product that might be used in connection with the manufacturer's product." (MSJ Decision 11). Nevertheless, as explained in the MSJ Decision, this case and the asbestos litigation generally cause the Court to consider whether

> the same policy considerations that support the general rule justify the imposition of a duty to warn of another's product where a manufacturer's product *must* incorporate another's product in order to have any practical use for the intended user, and the other's product is inherently dangerous, and the manufacturer knew or should have known of the hazards inherent in the other's product.

(Decision and Order, pp.11-12).

The question, as posed by the Court in the MSJ Decision, was purposefully narrow. That is, the Court questioned whether a manufacturer should have a duty to warn of danger's inherent in another product where the manufacturer's product *must* use the other product. The Court believes that many of the policy considerations that require a manufacturer to warn of dangers to its product would support the imposition of a duty on a manufacturer to warn of dangers that might be inherent in another product that must be used in order for the manufacturer's product to function properly. In other words, if a product could only function if incorporated with another product, the public could reasonably expect the manufacturer to be aware of the inherent dangers of the other product and to warn of those dangers.

The circumstances under which the law should recognize the duty are, however, limited. To require manufacturers to be aware of and warn of dangers inherent in every product that could be used with, but is not required to be used with, the manufacturer's product would not

7

only be unreasonable, but would be inconsistent with the bases for the imposition of the duty to warn as set forth in the Restatement.

In this case, the Court is not convinced that the duty to warn as to another's product should be extended to Goulds. The record establishes that Goulds pumps do not require the external insulation (i.e., the asbestos containing product) in order to function properly. In other words, the pumps can perform their job (i.e., move fluids) regardless of whether the insulation is applied.

On the record before the Court, however, the Court's analysis does not end with the Court's assessment of whether Goulds had a duty to warn of the dangers of asbestos containing material manufactured by another manufacturer. In opposing the motion for summary judgment, Plaintiffs cite testimony from a Goulds corporate representative (Eugene Bradshaw) in which he testifies that some Goulds pumps, specifically model 3196, were insulated by Goulds before leaving a Goulds facility. (Opp. S.M.F. ¶ 3; Henderson Aff. Exh. F, at 163-67.) Great Northern did order several model 3196 Goulds pumps. (A.S.M.F. ¶ 23.) Viewing the Goulds corporate representative testimony in the light most favorable to Plaintiffs, the testimony generates an material issue of fact as to whether asbestos containing material was included as part of some of the Goulds pumps when Goulds shipped the pumps to Great Northern. Insofar as the Court has previously determined that Plaintiffs have demonstrated the necessary product nexus to establish a prima facie case, the factual dispute regarding the inclusion of asbestos containing material on the model 3196 pumps prevents the entry of summary judgment.

The Court recognizes that Goulds challenges the quality of the evidence, and maintains that Plaintiffs cannot establish that the model 3196 pumps that might have been delivered to

8

Great Northern contained asbestos material. These questions are, however, for the fact finder to assess.[3]

### 2.    *Negligence*

In negligence, the duty of a manufacturer to warn of the dangers of its products is similar to the duty to warn in strict products liability actions. *See Bernier*, 516 A.2d at 540 ("A strict liability failure-to-warn case does resemble a negligence action because the reasonableness of the manufacturer's conduct is the critical issue.") The Law Court has applied the section 388 of the RESTATEMENT (SECOND) OF TORTS to negligence actions for the breach of a duty to warn of dangerous propensities of products:

> One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
>
> > (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
> >
> > (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
> >
> > (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

*Bonin*, 2005 ME 59, ¶ 10, 873 A.2d 346 (quoting RESTATEMENT (SECOND) OF TORTS § 388).

In their briefing, the parties draw no distinction between the duty to warn in strict liability or the duty to warn in negligence.[4] The Court also perceives no appreciable difference between

---

[3] Among other things, the fact finder will have to assess Mr. Bradshaw's credibility as a witness, and whether it is reasonable to infer from Mr. Bradshaw's testimony and the documentary evidence that the Decedent was exposed to asbestos particles from asbestos containing material incorporated in or applied to Goulds' pumps before the pumps left Goulds' control.

[4] Many of the recent actions brought in negligence based on the duty to warn involve the failure to warn a minor of dangerous propensities in a product. *Compare Bonin*, 2005 ME 59, ¶ 1 873 A.2d 346 (articulating the issue as "whether [the defendant] may be found negligent for supplying dangerous machinery to a minor"), *and Dickinson v. Clark*, 2001 ME 49, ¶ 9, 767 A.2d 303 (discussing whether the dangers of a wood splitter would be obvious to a

9

the two and adopts its analysis regarding strict liability duty to warn. Similarly, the Court adopts its analysis regarding the material issue of fact in dispute as to the presence of asbestos containing material in Goulds' products.

III.    CONCLUSION

Based on the foregoing analysis, the Court determines that Goulds Pumps, Inc. did not have a duty to warn of the dangers inherent in asbestos containing material that might have been applied to the Goulds' products after Goulds shipped the products. The Court otherwise denies Goulds Pumps, Inc.'s motion for summary judgment.

Pursuant to M.R. Civ. P. 79(a), the Clerk shall incorporate this Decision and Order into the docket by reference.

Date: 1/25/13

Justice, Maine Business & Consumer Court

Entered on the Docket: 1·28·13
Copies sent via Mail __ Electronically ✓

---

teenager in evaluating whether the supplier had a duty to warn), *with Cuthbertson v. Clark Equip. Co.*, 48 A.2d 315 (Me. 1982) (applying section 388 to a supplier of farm equipment after the death of an adult operator).

10

BCD-CV-10-19

Gwendolyn Richards, Indiv.      v.      Armstrong Int'l et al
& as PR of the Estate of Austin
Richards et al

Attorney for Plaintiff:
Daniel Kagan, Esq.
Berman & Simmons
PO Box 961
Lewiston ME 04243-0961

Attorney for Goulds Pumps:
Jeffrey Edwards, Esq
Preti Flaherty
PO Box 9546
Portland ME 04112

Attorney for Crane Co:
David McConnell, Esq.
Perkins Thompson
PO Box 426
Portland ME 04112-0426